## B. M. COLLYNS V. W. W. CAIN.

### No. 1066.

1. **Land Board—Act of 1883.**—Under the Act of 1883 the Land Board had no power to sell in any other manner than as directed by the statute. It has been decided that a sale made by the board at Austin, without the classification, etc., prescribed would be void.

2. **Validating Act of 1889—Good Faith.**—The sale under which plaintiff claimed being void, because not made in the county, and probably for other reasons, it devolved upon him to prove that in good faith he had complied with the requirements of the Act of 1883, the regulations of the State Land Board, and the terms and conditions of the contract of purchase. Such proof was necessary to the validation of his title under the healing act of 1889.

3. **Misdescription.**—In plaintiff's application for purchase, the land was described as "dry grazing land" and "soil not suitable for agricultural purposes." The soil was good. *Held*, a misdescription inconsistent with good faith in the purchase—a correct description being required by rules of the Land Board.

4. **Validating Act of 1891.**—The healing act of 1891 (General Laws, p. 130) also extended only to parties acting in good faith in making purchases.

5. **Possessory Right Does Not Obtain in Public Land.**—The rule that possession is sufficient evidence of title to recover against one trespassing upon such possession does not apply to an occupant of land a part of the public domain.

6. **Good Faith—Reasonable Ground.**—In submitting the issue of good faith by the agent of the plaintiff in making the purchase, the court properly instructed the jury, that the agent should have had "reasonable ground" for believing his description to have been correct, to constitute plaintiff a good faith purchaser.

APPEAL from Tom Green. Tried below before Hon. J. W. TIM-MONS.

*R. H. Ward,* for appellant.—The appellant proved that his agent making the purchase acted in good faith. The verdict was against the testimony. Acts 1883, p. 85 (Land Board); Acts 1889, p. 106 (validating acts of Land Board); Acts 1891, p. 130 (validating acts of Land Board); Flanagan v. Nasworthy, 1 Texas Civ. App., 470.

As to the duty of this court to revise action of court below in not granting motion for new trial, on the facts: Railway v. Schmidt, 61 Texas, 285, 286; Clark v. Loftus, 80 Texas, 150; Railway v. Somers, 78 Texas, 441; Willis v. Louis, 28 Texas, 191.

Verdict of jury not conclusive where witness testified by deposition: Thorn's Heirs v. Frazer, 60 Texas, 259.

As to the sufficiency of appellant's possession: League v. Stock Company, 21 S. W. Rep., 307; Talliaferro v. Butler, 77 Texas, 580; Church v. Wagoner, 78 Texas, 201.

Prior possession sufficient title as against naked trespasser: Parker v. Railway, 71 Texas, 133; Christy v. Scott, 14 How., 291.

Naked trespasser as against prior possessor can not plead that title is in the government: Christy v. Scott, 14 How., 291.

*T. L. Nugent* and *Cochran & Hill,* for appellee.—1. Appellant acquired no title to the land in controversy by the sale and award to him by the Land Board under the Act of 1883, for the reason that said sale was not made in Tom Green County, nor at the court house of Tom Green County, nor under public competitive bidding, and no classification of said land as required by law was ever made or adopted by the Land Board, and appellant's title, if any he had, must flow from the validating act of 1889. Acts 1883, Laws 18th Leg., regular session, sec. 8, p. 87; Martin v. McCarty, 74 Texas, 128.

2. In order to secure the benefits of the validating act of March 12, 1889, it was incumbent upon the appellant to bring himself clearly within the provisions of it, and to show that he was entitled to the relief intended to be granted by that act. Acts 21st Leg., regular session, p. 106; Blum v. Looney, 69 Texas, 1; Flanagan v. Nasworthy, 1 Texas Civ. App., 476.

3. The evidence shows, that if the plaintiff ever had prior possession of the land, it was State school land at the time of appellee's entry thereon, and appellant's possession thereof was forbidden by law, and he was subject to prosecution, both civil and criminal, in the courts of the State, and he could acquire no right thereby. Willson's Crim. Stats., pp. 139, 140; Laws 20th Leg., pp. 89, 90.

COLLARD, ASSOCIATE JUSTICE.—This is an action of trespass to try title by appellant against appellee for 640 acres of land in Tom Green County, being section number 80, in block Z, surveyed for the common school fund by virtue of certificate number 418, issued to the East Line & Red River Railroad Company. Plaintiff claimed the land by purchase from the State under his application made under the Act of April 12, 1883. Appellee (defendant) filed a plea of not guilty, and set up that plaintiff's title was acquired by fraud and misrepresentations to the Land Board, and was therefore void. Verdict and judgment were for defendant for the land, from which the appeal was taken.

The plaintiff claimed title as follows: November 21, 1883, his agent, C. D. Foote, made application to the State Land Board to purchase seven sections of the common school lands, describing them, name of original grantee, and number of certificate by virtue of which the surveys were made, number of section and number of acres, stating the amount of his bid, including the land in controversy, section number 418, in which all the surveys were described as "dry grazing land, no water, no timber, mesquite grass, soil not suitable for agricultural purposes." The application was sworn to and filed in the office of the county surveyor, November 23, 1883. It was forwarded by the county surveyor to the State Land Board at Austin, and filed in the office of the secretary of the board, December 17, 1883. The board accepted the bid of plaintiff for the land ($2 per acre), and on January 10, 1884, awarded the land to him at Austin, Texas. Plaintiff, by his agent, complied with the law of 1883, under which his application was made, by making cash payment of the amount required by law, and executing his notes for the balance of the purchase price. Plaintiff proved, that he had made all payments on the land as required by the law and his contract up to time of trial.

The defendant offered no title. He entered upon the land in the spring of 1889 under an application to purchase as an actual settler, fenced it, and has had actual possession of it ever since. His answer setting up title by purchase in 1889 was stricken out on demurrer.

The jury evidently found that plaintiff's agent did not act in good faith in describing the land or the soil.

Appellant insists by assignment of error, that the court should have set the verdict aside upon motion for a new trial, upon the ground that there was no evidence justifying the verdict that plaintiff's agent acted in bad faith in describing the land in the application to purchase.

Our conclusion as to the testimony is, that it fails to show that there was bad faith or a want of good faith in classing the land as not suitable for agricultural purposes. The effect of the testimony is, that at the time the application was made the land was not deemed to be agricultural land and would not have been classed as such, though there is testimony tending to show that since the time of the application, say since 1887, the land should be classed as suitable for agriculture.

The rules of the Land Board required, that "The application shall be in writing, and addressed to the secretary of the Land Board, Austin, Texas. Said application shall fully and minutely describe each and every section desired to be bought or leased, giving number of section, block, and certificate, and name of original grantee, with character of soil, grass, timber, and water, if any, on each section or piece of land." The application was to be sworn to, "and the lease or sale" —say the rules—"will be regarded as vacated and null for misrepresentation or false description."

As before stated, the description of the soil in plaintiff's application, after stating that it was dry grazing land, was, "Soil not suitable for agricultural purposes." The evidence tends to show that the soil on this survey was suitable for agricultural purposes when there was sufficient rain to raise crops, and the verdict of the jury, to the effect that the application did not in good faith describe the soil, is supported by the evidence. The affidavit of the applicant was, that he had "correctly given * * * the character of the soil," etc. There was no classification of the land under the Act of 1883, and it was not in proof that any classification as provided by the Act of 1881 had been adopted by the Land Board.

H. B. Tarver, the county surveyor of Tom Green County, viewed and appraised the State school lands in Tom Green County in 1881 and 1882, under the Act of 1881, then in force. He filed his report with the Commissioners Court of the county, one copy of which was filed in the county surveyor's office, one with the clerk of the County Court of Tom Green County, and one was sent to the General Land Office at Austin. The copies filed in the offices of the clerk and surveyor of the county were washed away and destroyed by a flood in 1882. Tarver, as surveyor of the county, acted as agent of the State Land Board in Tom Green County under the Act of 1883, and, pursuant to resolutions of the board, received applications of bidders, filed them in his office, recorded them in a book kept for that purpose, and then mailed them to the secretary of the board at Austin. Tarver testified: "I don't know that the Land Board used my classifications of school lands in Tom Green County, made under the Act of 1881, in making sales in January, 1884. I know that the Commissioner of the Land Office sold lands under my classifications."

The land was not sold at the court house door in Tom Green County, nor cried off there, but was awarded to plaintiff at Austin by the Land Board, January 10, 1884.

The question submitted by the court to the jury on the trial was whether plaintiff or his agent, Foote, acted in good faith in purchasing the land, and complied with the rules of the Land Board; instructing the jury, that if they did act in good faith, the verdict should be for the plaintiff. And on the same question of good faith the court charged the jury: "And you are instructed, that if said Foote, at the time he made the application to purchase said land for plaintiff, believed the description of said land contained in said application was substantially true, and had reasonable ground for so believing, the said description would be considered as made in good faith." The court also instructed the jury, that "if you do not find that said purchase was made in good faith, then you will return a verdict in favor of defendant."

The verdict under these instructions being for defendant, the jury evidently found that plaintiff's agent did not act in good faith; and appellant insists that the verdict was contrary to the evidence, and that the court below should have granted him a new trial.

*Opinion.*—Plaintiff could not recover the land unless he showed by competent testimony that he acted in good faith.

The Act of 1883, under which plaintiff made his application to purchase, after providing for the classification of the public free school lands into "agricultural, pasture, and timber lands," and a tabulated statement of the lands in each county, showing certain named conditions, provided for the sale of such lands; and section 8 of the act provides, that the purchaser desiring to purchase shall file his application with the person authorized to sell, designating the particular section, or tract less than a section, which he desires to purchase, and accompany it with a sufficient sum of money to pay for advertising the bid in such manner as may be prescribed by the board; and on the first Tuesday of the month designated in the advertisement, and after at least twenty days' notice, the person having authority to sell shall sell the same to the highest and best bidder at the court house of the county in which it is situated, if in an organized county, or if in an unorganized county, at the court house door of the county to which it is attached for surveying purposes. The application shall be considered the first bid, unless raised before offered at public outcry, etc. Gen. Laws, 1883, p. 87, sec. 8 of the act. The act directs a classification of the lands into agricultural, pasture, and timber land, and provides for a tabulated statement of the lands of each county, showing certain conditions of each section (Id., section 3), and then directs, that when the tabulated statement shall have been forwarded to the surveyor of the county or land district, and the board shall have designated some one to represent the State in the disposition of the land in such county or land district, and notice of such facts shall, under direction of the board, have been published in not more than three newspapers of the State, and shall have been published under direc-

tion of the person authorized to sell for thirty days in the section where the land is situated, the land of such county or land district shall be considered upon the market for sale, and the person designated by the State shall receive bids for the same. Id., sec. 7.

Thus the statute provides what is necessary to put the public school lands on the market for sale, and prescribes the manner of sale by competition after due notice to the public.

It has been held in this State, that the Land Board had no power to sell these lands in any other manner than as directed by the statute; that a compliance with the statute was a prerequisite to the power to sell; and specially that a sale by the Land Board at Austin, without the classification and tabulated statement prescribed, would be void. The State v. Opperman, 74 Texas, 136; Martin v. McCarty, 74 Texas, 132; Snyder v. Nunn, 66 Texas, 255; Flanagan v. Nasworthy, 1 Texas Civ. App., 470.

In the case before us, then, the sale, having been made without advertisement or opportunity for competition—out of the county where the land was situated, and in a wholly different manner from that prescribed by law—must be held to be void, upon the ground that the board had no power to so make the sale. It being a void sale, the purchaser can not claim the benefit of the healing act of 1889, unless he comes within its provisions. The act (General Laws 1889, p. 106) validates all sales of such lands to all persons who purchased in good faith under the Act of 1883 and who have in good faith complied with the requirements of the Act of 1883, the regulations of the State Land Board, and the terms and conditions of the contract of purchase. The burden of proof is upon him who seeks relief under the healing act to show that he acted in good faith in the purchase of the land and in complying with the rules of the Land Board. Hence the question submitted by the court to the jury was proper. The evidence supports the finding that plaintiff's agent did not act in good faith in describing the soil of the land. It may be, and the evidence does show, that the statement that the land was not suitable for agriculture was true, because there was not sufficient rainfall in the country to produce good crops, but the soil, as soil, was good and suitable for agriculture in case there should be sufficient rainfall. The land was classed in the application as pasture land, but the applicant was asked as to the character of the soil. It was of consequence to the State and the Land Board to be informed truthfully as to the character of the soil in order to act advisedly in pricing the land, in accepting or rejecting the bid. The land may have been classed as not suitable for agriculture because of insufficient rainfall, and yet if the soil were rich and adapted to agriculture, with good seasons it would be worth more than rocky or poor soil that would not be adapted to agriculture with plenty of rain. We can but approve the verdict upon this question as disposing of the very question submitted.

But appellant says his purchase is protected by the healing act of 1891 (General Laws 1891, p. 130), entitled "An act to make valid and confirm contracts of sale made by the Land Board of the State of Texas with divers persons for the sale of the free school, university, and asylum lands of the State of Texas sold under the Act of the Legislature of the State of Texas, approved April 12, 1883." This act contains the emergency clause. The preamble and a part of the first section, with which we are concerned, are as follows:

"Whereas, the Land Board of the State of Texas, duly appointed for that purpose, did make contracts under the Act of April 12, 1883, for the sale to divers persons of the free school, university, and asylum lands of this State; and

"Whereas, many of such persons acting in good faith, believing that the said contracts were valid and binding and secured to them the right to acquire valid titles to said lands by a compliance with said act, have paid to the State a part of the purchase price of the said lands and the interest on the amount of said contract price for several years; and

"Whereas, it has been found that said contracts have been made by said Land Board, in many instances, without a strict compliance with the requirements of the said law, whereby the said contracts are rendered invalid, and said purchasers have failed to acquire any right under the purchases and contracts so made; and

"Whereas, it is inequitable and unjust that the said parties so acting in good faith, and who have complied with the requirements of said act, should be deprived of their equities, so intended to be acquired, and which the State in good faith intended to confer upon them, by reason of the failure of said Land Board to comply with said law, and thus lose the benefit of what they have paid on said contracts, and be deprived of said lands; therefore,

"Section 1. Be it enacted by the Legislature of the State of Texas, that the failure of the Land Board to comply with the requirements of the Act of April 12, 1883, in placing free school, university, and asylum lands of the State upon the market, or in selling the same, shall not have the effect to render invalid the right, title, or claim of any purchaser of such lands under any contract made with said Land Board."

This act can not apply to any class of persons except such as have acted in good faith in the purchase of lands. The preamble indicates the class of persons who are to be relieved by it. Persons who have deceived the agents of the State in describing land bought, and so perpetrated a fraud upon the State, are not protected. The preamble makes this evident. In construing this statute, it must be borne in mind that it makes valid all sales to which it applies, as well against the State as others—valid as well in action by the State to cancel the sale for fraud as in a controversy between individuals. The statute was not intended to cure a title obtained by fraud, and, in our opinion, does not reach the defect in plaintiff's title.

Plaintiff could only recover in this action by showing valid title from the State. His purchase under the Act of 1883 was void, not merely voidable at suit by the State; and to entitle him to recover against a naked trespasser he must show that his valid title has been cured by statute. This he has not done, and he can not recover.

But he claims that the court should have instructed the jury, as requested, that if they should find from the testimony that he, either by himself or tenant, was in the actual possession of the land, and that while so in possession defendant entered upon the same and ousted him or his tenant from such possession, then he, the plaintiff, would be entitled to recover, and the verdict should be in his favor.

It was in proof that plaintiff had sometime in 1884 leased this section of land to the Iowa and Texas Cattle Company, that the company had fenced in the same with other pasture lands, so inclosing about 80,000 acres in pasture, and that the cattle company were so in possession of the land in suit from that time to the time Cain, the defendant, entered, fenced, and took possession of the same, in 1889. Defendant offered no title in evidence.

We do not think the charge asked should have been given. It is a general rule that prior possession is sufficient to enable plaintiff to recover of a mere trespasser in an action of trespass to try title. Lea v. Hernandez, 10 Texas, 137; Kolb v. Bankhead, 18 Texas, 228; Wilson v. Palmer, 18 Texas, 595; Duren v Strong, 53, Texas, 379; Caplen v. Drew, 54 Texas, 496; Parker v Railway, 71 Texas, 132. But we do not think this rule applies to public domain, or where the real title is still in the State. A possessory right can not mature in such a case. It has been frequently held in this State, that the plea of ten years' limitation will not be available if during a portion of the time the title was in the government or the land was vacant. Wood v. Wilder, 42 Texas, 410; Austin v. Dungan, 46 Texas, 246; Truehart v. Babcock, 49 Texas, 258. If a right by possession of land can not be acquired against the State, it can not be acquired against any one until the title passes from the State. Such a right can not accrue as long as the title remains in the State. If a possession is not such that by lapse of time it would mature into title, it can not be title in itself sufficient to maintain an action of trespass to try title. The general rule is, that the plaintiff must deraign title from the sovereignty of the soil in order to recover in trespass to try title; but it has been seen, prior possession in some cases is made equivalent to such deraignment. This, however, can not be if the possession is wrongful as against the State. It is not the policy of the law to allow parties to litigate to judgment upon possessory rights to land the legal and equitable title of which is in the State. In this case the title is shown to be in the State, and in our opinion there was no error in refusing the charge asked by plaintiff.

We think it was not error to exclude the copy of the appraisement and classification of the land in controversy made by H. B. Tarver,

county surveyor, under the Act of 1881, wherein the land in suit is classed as grazing land, because the testimony was immaterial. It was conclusively shown by the testimony that the land was not put upon the market as required by the statute, so as to induce competition, and that it was not sold in the county where the land was situated, though an organized county, but at Austin, Texas; and therefore the sale would be void, notwithstanding there might have been a classification under the Act of 1881 made by the surveyor of the county, and approved by the Commissioners Court which the Act of 1883 made sufficient (section 8), unless the Land Board directed otherwise. The classification offered is indorsed "rejected"—whether by the Commissioner of the Land Office òr the board we can not say, but at least it is not in such form as that the court should have admitted it in evidence without explanation. Besides, as before stated, it was immaterial, as the sale was void for other defects shown.

The court refused a charge asked by plaintiff, to the effect, that if plaintiff did not strictly comply with the rules and regulations of the Land Board in purchasing the land, but that at the time of the application the agent, Foote, believed the description of the land as contained in the application was substantially true, then plaintiff would be a purchaser in good faith. The court in the general charge instructed the jury as requested, except that it required the agent to have had "reasonable ground for so believing." We approve the court's charge, and think there was no error in refusing the requested charge.

We find no reversible error in the case or the judgment, and it is affirmed.

*Affirmed.*

Delivered December 12, 1894.

FISHER, Chief Justice, did not sit in this case.