LORINO v. CRAWFORD PACKING CO.
et al.
No. 11475.

Court of Civil Appeals of Texas. Galveston.
Jan. 14, 1943.

Rehearing Granted Feb. 4, 1943.

Appellant's Rehearing Denied Feb. 25, 1943.

Second Motion for Rehearing Denied
March 25, 1943.

Charles Murphy, of Houston, for appellant.

W. C. Gray, of Palacios, and Styles & Erickson, of Bay City, for appellees.

Taliaferro, Graves, Hutcheson & Fahey, of Houston, for appellees on rehearing.

CODY, Justice.

Plaintiff below brought this action in trespass to try title to a parcel of land in Matagorda County, April 17, 1940. To the formal allegations of his petition plaintiff added the allegations necessary to be proved in order to establish a ten years' limitation title. Defendants below answered separately, pleading not guilty. The case was tried without a jury, and when plaintiff rested, defendants moved for a verdict upon plaintiff's evidence. The Court thereupon rendered judgment for defendants upon the finding incorporated in the judgment, in haec verba: "* * * that the land sued for by plaintiff is subject to the ebb and flow of the tide and plaintiff having failed to prove that title to said land ever passed out of the State of Texas; * * *", etc. Plaintiff as appellant seeks a reversal of the judgment upon six points, which, in the interest of brevity, we recast into the following three points:

Point 1. The only evidence introduced in this case proved that plaintiff and those under whom he claims had held the prior possession of the land sued for more than thirty years at the time defendants, who made no claim that they were other than mere trespassers, ousted plaintiff from his prior possession. This being an action in trespass to try title, mere proof by plaintiff of his prior possession raised the presumption that such possession was lawful, inclusive of the presumption that title to the land possessed had passed out of sovereignty, and into plaintiff; and in the absence of any evidence by defendants the Court erred in rendering a take-nothing judgment against plaintiff.

Point 2. It was undisputed that defendant Hafner went into possession of the land sued for in virtue of a written lease from plaintiff. The Court should have held said defendant estopped to deny plaintiff's title.

Point 3. It was undisputed that defendant Crawford Packing Company took possession of the land sued for from plaintiff's tenant Hafner, and the court should have held the former equally estopped with the latter to deny plaintiff's title.

The following is deemed a sufficiently full statement of the facts to determine whether the judgment rendered against plaintiff is erroneous:

In 1904 the War Department issued a permit to·one Howard Stapp, under which

Stapp appropriated a location in Tres Palacios Bay, and built a wooden oyster house at a point in the Bay which was covered by some three feet of water. Tres Palacios Bay is, of course, a part of the Gulf of Mexico; and its water ebbs and flows with the tide. Said location was distant from Duson Avenue, the street nearest the Bay in the City of Palacios, something like six hundred feet and opposite to where the south end of Eighth Street foots upon and connects with Duson Avenue. The land lying between Duson Avenue and the Bay is unplatted; indeed, in case of an unusually high tide, it has happened that Duson Avenue has been covered by water from the Bay. At the time Stapp built his oyster house, he built a wooden wharf thereto from Duson Avenue, opposite the foot of Eighth Street. His oyster openers cast the oyster shells into the water from the oyster house, and the shells were disposed of so as to build up from the bottom what is designated as land. The house had to be repaired and rebuilt due to the ravages of storms from time to time, and the evidence shows that it is now upon "land". The shells were also cast under the wharf, and before the year 1918 the wharf had become replaced with "land" consisting of shell, which is variously referred to as the "walkway" and the "driveway". In that year plaintiff purchased Howard Stapp's rights. The storm of 1919 very largely destroyed the oysterhouse and the packing plant machinery therein. Plaintiff caused the house to be rebuilt, but acquired a place near the railroad at which he installed his packing plant. He has caused the "walkway" to be raised higher above the water, and until the year 1934 he continued to have it repaired and rebuilt where it was damaged by the water. This "walkway" was used by plaintiff to get to and from his oysterhouse, and over it the wagons in which his seafood was hauled were driven. Plaintiff conducted his business in the name of the Liberty Fish and Oyster Company. On August 1, 1934, he made a written lease to defendant Hafner; and on August 1, 1936, he and Hafner executed a new written lease. The property covered by the first lease is described therein as "lying and being situated in the County of Matagorda * * * being all the property owned by Lessor, situated upon the shores of Tres Palacios Bay, and known as the property formerly used by the Liberty Fish and Oyster business". In the second lease, which provided for an increased consideration, the property covered therein was described as "being the properties owned by lessor situated upon the shores of Matagorda of Tres Palacios Bay, and where the main highway crosses, both places formerly occupied by the Liberty Fish and Oyster Company". Both of the leases contained covenants for peaceful surrender upon the expiration of the leases respectively, and against subletting except upon written consent of lessor. Hafner went into possession of the oysterhouse and "walkway" under these leases.

Thereafter, on March 1, 1937, defendant Hafner sold by a written instrument all the assets of the business operated by him in Palacios to defendant Crawford Packing Company, with certain exceptions not here material; and under this instrument the Crawford Packing Company took possession of the property sued for by plaintiff. The property sued for is described in plaintiff's petition as being a part of fractional section 3, of the City of Palacios, according to the P. Whitty map of that city, and as being shown thereon as a part of the unplatted portion of Palacios City Townsite Company property out of the T. J. Dasher Survey, more particularly described in haec verba: "Beginning at the south side of Duson Avenue, which point is a prolongation of the west line of Eighth Street, and running south of the water's edge of Tres Palacios Bay; thence East with the meanders of said Bay to a point, which point is the prolongated line (sic) East line of Eighth Street; Thence North along said line to a point on the South line of Duson Avenue; Thence West a distance of eighty feet to the point of beginning, being a strip of land eighty feet in width."

It is well settled as the law of this State that soil lying below the line of ordinary high tide is, in legal contemplation, water, and not land. De Merit v. Robison, Commissioner, 102 Tex. 358, 116 S.W. 796, 797. We will not be extreme to inquire whether the built-up land which plaintiff sues to recover is above or below such line of ordinary high tide, because, at the time plaintiff and those under whom he claims went into possession, the bottom of the Bay upon which such built-up land rests was undoubtedly below the line of ordinary high tide, and if plaintiff and his predecessor went into possession thereof as trespassers, they could not, by simply building up land from the bottom of the

Gulf until it rose above such line, acquire title to such bottom. And it is obvious if the State owns the bottom of the Bay upon which the "built-up" land rests, it likewise owns the improvement thereon in the form of "built-up" land. That is true unless there is some law which provides that, under such circumstances, the person making such land shall own it. No such law has been pointed out.

It has been held by our Supreme Court that from the very nature of the property which the government possesses in its navigable waters, bays and bayshores, it can ordinarily be best appropriated by devoting it to public use, and not by granting away any exclusive right to any one. "It often happens, however, that the public use and enjoyment, of this species of property, may be promoted and increased, by allowing portions of it to become private property; as for wharves, docks, and the like, in harbors and ports." City of Galveston v. Menard, 23 Tex. 349, 393. The court then goes on to state: "The legislatures of the several states may grant it, if not previously appropriated by grant, prescription, or otherwise; provided, the exercise of an exclusive right, thus granted, does not infringe upon the rights of the government of the United States, in its power 'to regulate commerce with foreign nations, and among the several states.'" (Citing authorities.) See also city of Galveston v. Mann, Atty. Gen., 135 Tex. 319, 143 S.W.2d 1028, 1033, wherein it is pointed out that the State, upon its annexation with the United States, retained " 'all the vacant and unappropriated lands lying within its limits,' subject only to the superior rights of navigation of the Federal government in the navigable waters of the State".

We understand appellees' position on this appeal is fairly presented in this paragraph quoted from their brief: "Therefore, the testimony showing conclusively that the land sued for was subject to the ebb and flow of the tide, and not the subject of grant [by the Executive Branch of the Government], the title to such land was conclusively proven to be in the State, against whom limitation may not be pleaded; and such testimony effectually rebutted any presumption of title in appellant by reason of his claimed prior possession. The land sued for by appellant being submerged land, subject to the ebb and flow of the tide no principle is better settled in Texas than that it is not subject to grant, and it

not being subject to grant, most certainly the title cannot be taken away by limitation or by prior possession." In support of such position appellees quote at length from the De Merit case, supra, which holds that the Commissioner of the General Land Office is without authority to issue a patent which will operate to include in the land granted the fee simple title to land embraced in the shallow waters of a bay. Appellees quote from no cases which hold that the State may not, through its legislature, authorize such use, occupancy, and possession as was here maintained by appellant.

The evidence in this record is undisputed. As shown above, this evidence shows that the War Department, an agency of the Federal Government, issued a permit under which the oyster house, and wharf connecting it with the shore, were constructed. While the existence of the permit was testified to, and a witness intimated that it was in the court room, appellees did not request to see it, or in any way dispute that such a permit had been duly issued, and acted under by appellant, and his predecessor. This was doubtless because of their view that no valid grant or permit could have been issued giving the exclusive right to Stapp and his successors to erect his oysterhouse, etc., and thereafter occupy the exclusive possession thereof.

It is undoubtedly the law that "mere prior possession of public lands is not sufficient to entitle plaintiff to recover the land, in trespass to try title, from even a trespasser". Collyns v. Cain, 9 Tex.Civ. App. 193, 28 S.W. 544, 545, writ denied. This is true, of course, because where it has been affirmatively established that the land sued for is "public lands" in which no possessory right therein has been granted, it necessarily follows that it has been affirmatively established that the plaintiff is a mere trespasser, i. e. wrong-doer, in having taken possession of the public domain. Where the evidence establishes that a plaintiff wrong-doer was doing wrong in occupying land from which he is ousted by another trespasser, the courts will not lend their aid to put him back in possession, so that he may continue his wrong-doing. Of course, the general rule is that, in a trespass to try title suit, the proof by a plaintiff that he was in prior possession of the land from which he was ousted by the defendant, establishes a rebuttable presumption that plaintiff's prior possession was supported by a good title. "The pre-

sumption which is raised in favor of the title of the possessor of land necessarily includes the presumption that the state had parted with the title to the land to some one, and that the possessor had acquired that title. * * * The presumption of title in the possessor is indulged in favor of quieting the land titles of the country, and to support the possession and right of those who, under a claim of right, hold such possession, but whose chain of title is not complete in all of its parts. * * *" House v. Reavis, 89 Tex. 626, 35 S.W. 1063, 1065. The rule just quoted is a rule of evidence merely, and not a rule of estoppel or property, " 'and, when the defendant shows affirmatively that the plaintiff has no title, and thus rebuts the presumption arising from his prior possession, it seems to be the law that the possession of the defendant, though he is a mere trespasser without any title, will not be disturbed.' " Richardson v. Houston Oil Company, Tex. Civ.App., 176 S.W. 628, 630, as quoted in Lund v. Doyno, 127 Tex. 19, 91 S.W.2d 315, 316.

■■ Now the "land" which appellant has sued to recover is, in its essential parts, a specialized or particular kind of wharf. It was built out far enough in the water to enable fishing boats, drawing three feet of water, to bring to it and sell and deliver their catch of fish or oysters to the owner of the wharf. On the off-shore end of the wharf a house was built in which the sea food delivered there could be economically prepared for market. In time, the shells from the oysters were used to transform the wharf and every part of it except the oyster house from a wooden structure into shell structure. If this wharf was the subject of ownership and the right to exclusive possession while it consisted of wood, this character was not ipso facto lost by its transformation into shell structure. To be sure, even while the wharf remained of wooden structure it was, in legal contemplation, "land" because it was a permanent improvement fixed to land. We have seen that portions of the public domain subject to the ebb and flow of the tide may be granted by legislative authority upon which to erect wharves and docks to be used in the shipping trade. If the shipping trade promotes the public welfare, so does the fishing trade. It has always been the public policy of the State and nation to encourage and promote the fishing trade. Upon the same principle under which the Legislature may grant a portion of the public domain upon which to maintain wharves to be used in the shipping trade, the Legislature may likewise permit or license a portion of the same kind of public domain to be used on which to maintain a wharf to be used in the fishing trade. The fact that the proof in this case shows that the wharf is located where the tide, in contemplation of law, ebbs and flows, does not establish that such wharf is not privately owned. Wharves used in connection with salt water shipping or fishing must be constructed where the tide ebbs and flows, and if the rule contended for by appellees prevailed, there could be no private ownership of wharves and docks.

■ The proof in this case is to the effect that from the time the oyster house and walkway were constructed by appellant's predecessor, until the Crawford Packing Company went into possession, appellant was in open, peaceable, continuous, adverse and exclusive possession thereof either by his predecessor or in person or by his tenant for thirty-five years. Appellee Hafner went into possession under a lease from appellant as shown above, and while in such possession as appellant's tenant yielded possession to Crawford Packing Company. Under such proof, had appellant made use of the action of forcible entry and detainer, there could be no question of his right to recover possession from his tenant or the party holding under his tenant. Even in the action of trespass to try title, proof that appellant leased the property to Hafner who gave possession to Crawford Packing Company established in appellant the prima facie title to it. Welder v. McComb, 10 Tex.Civ.App. 85, 30 S.W. 822, 825; Keys v. Mason, 44 Tex. 140. The fact that the property was where the water ebbed and flowed, the only place where it could be of any possible use or have any value in the fish and oyster business, does not affirmatively establish that it is public property in which appellant owns no possessory rights.

Appellant having proved prior possession and a prima facie title to the property for the purpose for which it was constructed and is devoted, and appellees having offered no evidence, judgment should have been rendered for appellant.

The judgment of the trial court is therefore reversed, and judgment is here rendered for appellant.

Reversed and rendered.

### On Motion for Rehearing.

 Where a court is trying a case without a jury, and grants a defendant's motion for a verdict urged at the conclusion of plaintiff's evidence, such action is the legal equivalent of granting a motion for an instructed verdict, where the trial is before court and jury. It has been more than fifty years since our Supreme Court held that a demurrer to evidence had become practically obsolete in our practice. Texas & P. R. Co. v. Murphy, 46 Tex. 356, 367, 26 Am.Rep. 272. The risk to a defendant, if he were wrong in demurring to the evidence, was that he would have judgment rendered against him. See Harwood v. Blythe, 32 Tex. 800, 801. And there was never any purpose in urging a demurrer to evidence where the trial was before the court without a jury. For where the court is exercising both his judicial functions and the functions of the jury, the defendant was, without urging a demurrer to plaintiff's evidence, entitled to the judgment of the judge on the evidence. We are convinced we erred in our original judgment in rendering judgment for appellant upon reversing the trial court's judgment, instead of remanding the cause for a new trial. When an appellate court finds that it erroneously rendered judgment upon reversal of the trial court, it is the duty of the court to set aside such rendition, and remand the cause, even upon its own motion. See Waldo v. Galveston, H. & S. A. R. Co., Tex.Com.App., 50 S.W.2d 274.

 As stated in our original opinion, it is apparent that appellant had a cause of action. Appellees merely contend that he mistook the appropriate form of action. Abolishment of common law forms of action was intended to prevent miscarriages of justice where a litigant with a good cause of action mistook the appropriate form of action. It is well known that trespass to try title is the only formal action known to our civil law, and the statute states substantially what the form shall be. Rains v. Wheeler, 76 Tex. 390, 393, 13 S.W. 324. And, while the general policy of our law is that no litigant shall lose his cause of action because of the form in which he brings it, yet, if he proves up a good cause of action, but mistakenly chooses trespass to try title as the form in which to bring it, he still must lose. But certainly if a litigant proves up a good cause of action, and his proof shows that his cause of action is one which is enforcible in trespass to try title, he has done all that is required of him. Here appellant proved that he was in prior possession of the land for which he sued, and using such land for purposes for which the Legislature could have granted same. Under settled law, the presumption thereupon arose that the grant to him or his predecessor in interest had been made. We can see no reason why the owner of land granted by the Legislature should be subjected to any greater burden, when he makes use of trespass to try title to recover his land, than the owner of land held under an executive grant. To so hold would make titles granted by the Legislature less secure than those granted by the executive·branch of government.

It will be noted that in the second lease, in addition to the property involved in this suit, there was an additional property included, the property located "where the main highway crosses". This was, as appears from the evidence, the packing house. While the packing house property is not involved in this suit, it is embraced in the description of property in the second lease, and by eliminating it from the property described in the second lease, there is left only the property involved in this suit. This, if it were necessary, shows that the parties were not limiting the word "property" to include only personal property.

 Whether appellant had exclusive possession of the property for many years is a fact question, and we withdraw any statement in the original opinion having the effect of indicating that he might have prescribed under the statute of limitations. However, a wharf such as this one is like a store or warehouse which is used by the public, as invitees and licensees, to resort to and do business with the owner. Appellant's right to prevail was not sustained upon the theory that he had prescribed under the statute of limitations, but upon his proof of prior possession.

We stated in the original opinion that the facts proven by appellant showed that he had a cause of action upon which he could have recovered had he brought forcible entry and detainer. We desire to amend that statement by merely stating that facts proven showed appellant had a cause of ac-

tion upon which he could have recovered. We do not hold that forcible entry and detainer was not appropriate, nor that it was.

Upon the court's own motion the order heretofore entered herein indicating that the rehearing was granted upon appellee's motion is reformed to show that the rehearing was granted upon the court's own motion, and as so reformed, the order reversing the judgment, and remanding the cause is continued in effect, and the motion of appellant for rehearing is refused. Our former opinion on rehearing is withdrawn.