**QANTEL BUSINESS SYSTEMS, INC. a/k/a MDS Qantel, Inc., Petitioner,**

v.

**CUSTOM CONTROLS COMPANY, Respondent.**

**No. C–7422.**

Supreme Court of Texas.

Dec. 7, 1988.

Clarence E. Eriksen, Patricia N. Brantley and Greg M. Luck, Arnold, White & Durkee, Houston, for petitioner.

William A. Tillman and Charles M. Pribilski, Tillman & Pribilski, Houston, for respondent.

ROBERTSON, Justice.

Computer Results sued Custom Controls on a sworn account. Custom Controls, a business consumer, then filed a separate suit against Computer Results, the retailer/distributor of a Qantel computer system. Custom Controls also sued Mohawk Data Services Corp. and Qantel Corp., the alleged manufacturers of the Qantel computer system. Custom Controls alleged the defendants had committed breach of warranty and engaged in false, misleading and deceptive practices or representations under the Texas Deceptive Trade Practices —Consumer Protection Act in connection with the sale of the Qantel computer system. TEX.BUS. & COMM.CODE §§ 17.-41–63 (Vernon 1987).

The parties agreed to consolidate the two causes into this single cause of action. Custom Controls nonsuited Computer Results and Computer Results nonsuited Custom Controls before trial. Custom Controls' suit against the remaining two defendants, Mohawk Data Services and Qantel, was then tried before the bench. After Custom Controls rested, Mohawk and Qantel moved for judgment on the grounds that there was no evidence in the record that Mohawk or Qantel engaged in any wrongful, misleading, or deceptive acts directly or vicariously. The trial court granted that motion and rendered judgment that Custom Controls take nothing against Mohawk and Qantel. On appeal, Custom Controls did not assert any points of error with respect to Mohawk; therefore, Qantel is the sole remaining defendant party in this appeal. The court of appeals found there was "*some* evidence (*i.e.* more than a scintilla) of a relationship between Qantel and Computer Results," such that Qantel could be held vicariously liable for the actions of Computer Results. 746 S.W.2d 261, 264. On that basis, the court of appeals reversed the judgment of the trial court and remanded the cause for a new trial. We reverse the judgment of the court of appeals and remand this action to that court for further consideration in accordance with this opinion.

Qantel asserts two points of error before this court. First, Qantel contends that there is no evidence that Qantel directly or vicariously committed any wrongful or deceptive practices. Second, Qantel questions a curious rule of law which prohibits a trial court, in a bench trial, from granting a defendant's motion for judgment at the close of the plaintiff's case when although some evidence of the plaintiff's claim is presented, the judge is unpersuaded by that evidence. We initially address this second point of error because it determines the way in which an appellate court must view the evidence.

The rule which Qantel questions originated in *Lorino v. Crawford Packing Co.*, 169 S.W.2d 235 (Tex.Civ.App.—Galveston), *aff'd*, 142 Tex. 51, 175 S.W.2d 410 (1943). In *Lorino*, the court of appeals stated that granting a motion for judgment in a trial to the court is the legal equivalent of granting a motion for directed verdict in a jury trial. *Id.* at 240. The appellate standard of reviewing the propriety of granting a motion for directed verdict in a jury trial applies equally to the granting of a motion for judgment in a trial to the court. *See, Rhinetubes v. Norddeutscher Lloyd*, 335 S.W.2d 269, 274 (Tex.Civ.App.—Houston [1st Dist.] 1960, writ ref'd n.r.e.); *Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650, 652 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Casey v. Sanborn's, Inc.*, 478 S.W.2d 234, 236 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ).

In reviewing a case in which a verdict has been directed, appellate courts must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *White v. South-*

*western Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). If the appellate court finds that there is any evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *White* at 262; *Collora* at 68.

Applying these rules to an appeal from an order granting judgment in a non-jury trial, as required by *Lorino,* forces an appellate court to reverse the trial court's judgment and remand the case if "there is any evidence of probative force to raise fact issues on the material questions presented." *Stegman v. Chavers,* 704 S.W.2d 793, 794–95 (Tex.App.—Dallas 1985, no writ). *See also Meyers v. Ford Motor Credit Co.,* 619 S.W.2d 572, 573 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). Therefore, despite the fact that the trial judge in a non-jury trial acts as both the trier of fact and of law, he may grant a motion for judgment at the close of the plaintiff's case only when there is no evidence presented to support the plaintiff's cause of action. *Allen v. Nesmith,* 525 S.W.2d 943, 945 (Tex.Civ.App.—Houston [1st Dist.] ), *writ ref'd n.r.e. per curiam,* 531 S.W.2d 330 (Tex.1975). A trial judge who grants such a motion is neither authorized to rule on the factual sufficiency of the plaintiff's evidence, nor to make findings of fact. *Charter Int'l Oil Co. v. Tolson Oil Co.,* 720 S.W.2d 165, 167 (Tex.App. —Austin 1986, no writ); *Yarbrough v. Phillips Petroleum Co.,* 670 S.W.2d 270, 272 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Eikel v. Bristow Corp.,* 529 S.W.2d 795, 797 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *Olshan Lumber Co. v. Bullard,* 395 S.W.2d 670, 672 (Tex.Civ.App.—Houston 1965, no writ). Rather, the judge, who is unpersuaded by the evidence, but finds the existence of some evidence to support the plaintiff's claim, is forced to dutifully listen to the defendant's portion of the case. Only after hearing the defendant's evidence is the trial judge authorized to make the factual ruling which could have been made at the close of the plaintiff's case.

Since the *Lorino* decision in 1943, courts have routinely and mechanically followed this rule. 169 S.W.2d at 240. *Stegman v. Chavers,* 704 S.W.2d at 794; *Coulson v. Sheppard,* 700 S.W.2d 336, 337 (Tex.App.— Corpus Christi 1985, no writ); *Olshan Demolishing Co. v. Angleton Ind. School Dist.,* 684 S.W.2d 179, 181–82 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Kennedy v. Kennedy,* 619 S.W.2d 409, 410 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Meyers v. Ford Motor Credit Co.,* 619 S.W.2d at 573; *Plumb v. Stuessy,* 603 S.W.2d 351, 354 (Tex.Civ.App.—Austin 1980), *rev'd on other grounds,* 617 S.W.2d 667 (1981); *see also* 4 McDONALD, *TEXAS CIVIL PRACTICE,* § 16.04 (1984). The *Lorino* rule has also been severely criticized because it fosters judicial inefficiency. *See e.g., Charter v. Tolson,* 720 S.W.2d at 167–68; *R.W.M. v. J.C.M.,* 684 S.W.2d 746, 751–53 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (Gonzalez, J., dissenting); *McDaniel v. Carruth,* 637 S.W.2d 498, 504 (Tex.App.—Corpus Christi 1982, no writ); *Guthrie v. Ray,* 556 S.W.2d 589, 591 (Tex.Civ.App.—Dallas 1977, no writ). We conclude that the criticism expressed in these cases is meritorious. When a plaintiff rests, he indicates that he does not desire to put on further evidence, except by rebuttal testimony, and that he has fully developed his case. The defendant should not be forced to put on a defense on the chance that he will prove the plaintiff's claim. No useful result obtains by having the court hear the defendant's evidence when the judge, as trier of fact, is unpersuaded by the plaintiff's case. A more judicially efficient and economical procedure is to allow the trial judge, sitting as trier of fact and law, to rule on both the factual and legal issues at the close of the plaintiff's case and to make factual findings at that time if requested by a party.

This rule is more in line with the purpose and spirit of the Texas Rules of Civil Procedure. Texas Rule of Civil Procedure 1 provides:

> The proper objective of the rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of

the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great *expedition and dispatch and at the least expense* both to the litigant and to the state as may be practicable, these rules shall be given a liberal construction. (emphasis added).

See also *R.W.M.*, 684 S.W.2d at 750 (Seerden, J. concurring).

Therefore, we sustain Qantel's second point of error attacking the continuing viability of the *Lorino* rule. Under this opinion, the trial judge is presumed to have ruled on the sufficiency of the evidence. Consequently, the standard of evidentiary appellate review applied by the court of appeals is incorrect.

Custom Controls' second point of error to the court of appeals attacking the factual sufficiency of the evidence to support the judgment was not addressed by that court. 746 S.W.2d at 262–63. We remand this cause of action to the court of appeals for consideration of the factual sufficiency point of error that was not previously addressed. *See Coulson & Cae, Inc. v. Lake LBJ Mun. Util. Dist.*, 734 S.W.2d 649, 652 (Tex.1987) (remanding for consideration of unaddressed attacks on sufficiency of evidence).

■ Additionally, we note that the court of appeals implies that the term "inextricably intertwined" provides an additional theory of vicarious liability in the context of a DTPA cause of action. 746 S.W.2d at 264. We are aware that the term "inextricably intertwined" has been urged as another method of establishing vicarious liability under the DTPA. *See Colonial Leasing Co. v. Kinerd*, 733 S.W. 2d 671, 673–74 (Tex.App.—Eastland 1987, *writ granted*); *Potere, Inc. v. National Realty Serv.*, 667 S.W.2d 252, 256 (Tex. App.—Houston [14th Dist.] 1984, no writ). The term "inextricably intertwined" finds its recent origin in connection with the DTPA in *Knight v. International Harvestor Credit Corp.*, 627 S.W.2d 382, 389 (Tex.1982). In *Knight*, this court held that when two parties are "inextricably intertwined" to a certain degree they may be held equally responsible for wrongful conduct. However, that statement was made in the context of establishing whether the plaintiff was a consumer with respect to the financing company as well as the seller of the truck involved in the action.

*Knight* had nothing to do with derivative or vicarious liability. "Inextricably intertwined" is not an additional theory of vicarious liability under the DTPA. This court could not have been more clear when it said in *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987): "Although a consumer suing under the DTPA need not establish contractual privity with the defendant, he must show that the defendant has committed a deceptive act which is the producing cause of the consumer's damages." The DTPA does not attach derivative liability to its defendants based on innocent involvement in a business transaction. *Id.* at 136. The court of appeals was incorrect to the extent it implied that the term "inextricably intertwined" is an additional source of derivative liability. *See* 746 S.W.2d at 263.

The traditional common law theories of vicarious liability, such as agency or *respondeat superior*, provide an adequate basis for creating vicarious liability under the DTPA. The DTPA does not recognize or envision the expansion of common law theories of vicarious liability to include "inextricably intertwined," or the mere existence of a "relationship" between parties.

In conclusion, we reverse the judgment of the court of appeals and remand this cause to the court of appeals for further consideration in accordance with this opinion.

GONZALEZ J., concurs in an opinion joined by CULVER, J.

GONZALEZ, Justice, concurring.

I concur and applaud that we have finally discarded the *"Lorino* rule." This rule has its genesis in the court of civil appeals' opinion on motion for rehearing in *Lorino v. Crawford Packing Co.*, 169 S.W.2d 235 (Tex.Civ.App.—Galveston), *aff'd* 142 Tex. 51, 175 S.W.2d 410 (1943). Under this rule, in a non-jury case, after a plaintiff rests, a trial judge who is unpersuaded by the plaintiff's evidence has to dutifully listen to

the defendant's portion of the case before making a determination on the merits of the cause of action. On appeal, a motion for judgment is treated identically to a motion for directed verdict in a jury trial. *See Charter Int'l Oil Co. v. Tolson Oil Co.*, 720 S.W.2d 165, 167 (Tex.App.—Austin 1986 no writ) (citing *Meyers v. Ford Motor Credit Co.*, 619 S.W.2d 572, 573 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ); *R.W.M. v. J.C.M.*, 684 S.W.2d 746, 751–53 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (Gonzalez, J., dissenting); *McDaniel v. Carruth*, 637 S.W.2d 498, 504 (Tex.App. —Corpus Christi 1982, no writ); *Guthrie v. Ray*, 556 S.W.2d 589, 591 (Tex.Civ.App.— Dallas 1977, no writ).

I write separately to make it abundantly clear that we are abandoning the *"Lorino* rule." The court today recognizes that there is an inherent difference between a motion for judgment in a bench trial and a motion for directed verdict in a jury trial. In a bench trial, the judge serves the dual capacity of fact finder and magistrate, occupying the same relation to the facts as a jury in a jury trial. The judge has the power and the duty to weigh the evidence, draw inferences and make reasonable deductions from the evidence and to believe or disbelieve all or part of it, just as a jury does. In short, after a plaintiff rests, on motion for judgment by the defendant, the judge has the power to decide not only whether the evidence presented raises a fact issue, but he or she is also empowered to make a determination on the merits. The granting of a defendant's motion for judgment simply means that the plaintiff has not met his or her burden of proof.

I am pleased that the court has finally discarded this illogical rule. It has been blindly followed by some while severely criticized by others. Abolition of this archaic rule will result in better use of our judicial resources and prevent unnecessary expense to the parties.

CULVER, J., joins in this opinion.