**Reverse and Remand and Opinion Filed February 13, 2014**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01147-CV

### JESUS GRACIA, Appellant
### V.
### CURTIS DAVIS, Appellee

**On Appeal from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-09-08253-A**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Francis

In this lawsuit alleging injuries from an automobile collision, the trial court directed a verdict for plaintiff Curtis Davis in the amount of $17,400 in past medical expenses and included that amount in the designated blank in the jury charge. The jury then went on to award more than $350,000 in other past and future damages.

On appeal, appellant Jesus Gracia argues the trial court erred in directing a verdict on past medical expenses. Further, he argues that because the amount was included in the charge, the error tainted the entire verdict. We agree. Accordingly, we reverse the trial court's judgment and remand for a new trial on damages.

On May 9, 2008, a car driven by Gracia rear-ended a Ford Explorer driven by Davis. Evidence suggested Gracia was talking on his cell phone at the time. At trial, Gracia filed a

written stipulation to liability and also testified he caused the accident, leaving damages as the only contested issue in the case. After the collision, Davis drove himself to the hospital complaining of back, neck, and shoulder pain. He was given discharge instructions for a muscle strain and prescriptions for Tramadol and Flexeril. About two weeks later, he went to Dr. Glenn Smith, a chiropractor, where he received a series of chiropractic treatments, diagnostic examinations, and tests related to his back, neck, and shoulder areas. An MRI taken in August was normal and did not reveal any disc bulges or herniation. Davis continued treatments with Dr. Smith for about four months, until September 8, at which time Davis said he reached a "plateau" in his treatments.

For the next thirteen months, Davis received no treatment but continued to take pain medication. In August 2009, he began working at a Wal-Mart distribution center warehouse filling orders for stores. His official job description required, among other things, that he be able to "lift, push, pull, and carry tools, objects or equipment above shoulder level without assistance"; move, lift, carry, and place merchandise and supplies weighing up to 60 pounds without assistance; and reach overhead and below the knees, including bending, twisting, pulling, and stooping. He acknowledged the job was "physically demanding." He worked eleven-hour shifts, bending over and constantly lifting heavy objects on and off pallets. He said he lifted items between two and fifty pounds all day, and there were times he could not go to work the next day because "[i]t just gets to the point where it just starts to hurt." Davis also said that, when he was hired, he did not disclose that he had an injury from a car accident or that he was taking pain medications. He explained he needed the job to support his family.

Shortly after he began the job, Davis stopped using his pain medications because Wal-Mart policy precluded such use. In October 2009, more than two months after he began the job at Wal-Mart, Davis returned to Dr. Smith to "get rid of the pain." In Dr. Smith's record of this

–2–

visit, he noted Davis "has suffered a re-exacerbation due to his increased activity at his new job."[1] After this visit and up until the date of trial, Davis incurred additional medical expenses related to treatments, medications, and diagnostic tests for back, neck, and shoulder pain. At trial, he testified he continued to have pain in his back, neck, and shoulder. He also testified that he did not have these problems before the accident.

Dr. Smith testified Davis suffered "soft tissue" injuries in the collision that likely would get worse as he aged. He explained that when Davis was hit from behind, the lower part of his body was pushed forward, but his head, because of its weight, stayed back, causing a "shearing force" on the spine. Dr. Smith testified Davis suffered a spinal cord contusion and the ligaments were stretched, causing muscle spasms, tingling, and facet problems. He treated Davis with laser therapy, electrical stimulation, ultrasound, and deep tissue massage over a period of four months. When Davis reached a plateau, meaning "he wasn't getting any better than what he was at the time," he was released with instructions to follow up "for future exacerbations." Davis returned thirteen months later and Smith began treating him again. Dr. Smith was shown a summary of all of Davis's past medical expenses and was asked if they were all "proximately caused by the automobile collision." Davis said they were. When asked why he believed this, Smith said Davis had pain after the accident and did not have pain before the accident.

After all of the evidence was presented, Davis's counsel moved for an instructed verdict on past medical expenses, arguing they were proven to be proximately caused by the collision and there was no controverting evidence. Gracia's counsel countered that the evidence raised an issue as to what portion of the expenses were "reasonably related" to the accident and the injuries sustained by Davis as a result of the accident. Specifically, counsel relied on evidence of the gap in treatment, arguing his return to Smith "could have been related to his work at Wal-Mart." The

---

[1] In Davis's medical records, another doctor noted the gap in treatment but that "recently pain returned."

trial court granted Davis's motion and included the full amount of past medical expenses in the jury charge. The jury then awarded Davis the following: past pain, $6,000; future pain, $58,000; past mental anguish, $8,500; future mental anguish, $60,000; past loss of earning capacity, $3,185.65; future loss of earning capacity, $52,000; past physical impairment, $6,000; future physical impairment, $60,000; and future medical expenses, $100,000.

On appeal, appellant contends the trial court erred in directing the verdict on past medical expenses when there was evidence of a "gap" in treatment, and the second treatment was followed by appellant beginning a physically demanding job at the Wal-Mart distribution center. He argues this evidence was sufficiently probative to allow the jury to consider whether the second treatment was causally related to the accident.

In response, appellee makes three arguments. First, he contends appellant "affirmatively conceded" the issue at trial by either his own testimony or his counsel's representations in a pretrial hearing. Second, if the issue was not conceded, he argues his chiropractor's testimony was uncontroverted and was therefore conclusive on the jury. Finally, he asserts that even if the directed verdict was error, the error was harmless and can be "easily rectified with a modest remittitur."

The plaintiff is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978). Our task in such a case is to determine whether there is any evidence of probative force to raise a fact issue on the question presented, and we review the evidence in the light most favorable to the person suffering the adverse judgment. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 348 S.W.3d 194, 217 (Tex. 2011). If no such evidence exists, the trial court may properly direct a verdict. *Byrd v. Delasancha*, 195 S.W.3d 834, 837 (Tex. App.—Dallas 2006, no pet.). However, if reasonable

minds could differ as to truth of the controlling facts, a trial court errs if it grants a directed verdict and refuses to submit the issue to a jury. *Id*.

In assessing personal injury damages, the trier of fact has great discretion in fixing the amount of the damage award. *Ponce v. Sandoval*, 68 S.W.3d 799, 806 (Tex. App.—Amarillo 2001, no pet.) (citing *McGalliard v. Kuhlman*, 722 S.W.2d 694, 697 (Tex. 1986)). Opinions and judgments of expert witnesses are not conclusive on the trier of fact. *Id*. A jury generally may disregard a doctor's testimony on both the necessity of treatment and on the causal relationship between the accident and the plaintiff's complaints. *Id*. at 806–07. Expert testimony as to whether an accident caused a particular injury is not binding upon a jury. *Id*. at 807. And, although such evidence regarding expenses incurred has evidentiary significance, it is not binding on the jury. *Id*.

Here, the evidence showed appellant was treated for injuries for four months following the accident. Then, for the next thirteen months, he received no medical treatment. Two months after beginning a physically demanding job, in which he worked eleven-hour shifts lifting up to fifty pounds, he returned to Dr. Smith for treatment. Dr. Smith's record of that visit showed Davis had suffered a "re-exacerbation due to his increased activity at his new job." We conclude this evidence was sufficiently probative to allow the jury to consider whether all of Davis's medical expenses were causally related to the accident. We find support for this conclusion in this Court's opinion in *Bullard v. Lynde*, 292 S.W.3d 142 (Tex. App.—Dallas 2009, no pet.), and our sister court's opinion in *Ponce*, both of which involve a trial court granting a motion for judgment notwithstanding the verdict for the full amount of past medical expenses after a jury awarded less than the plaintiff requested.

In *Bullard*, the plaintiff fractured her elbow in an automobile accident. An orthopedic surgeon advised her to keep her arm in a sling for six weeks and do stretches. 292 S.W.3d at

143. Shortly thereafter, the plaintiff left for college. After six weeks, she removed the sling and began using light weights. She stopped because her elbow hurt when she used them. She also tried to play sports but stopped because her elbow hurt. *Id*. at 144. A year after the accident, she went back to the orthopedic surgeon, who recommended surgery. At trial, the orthopedic surgeon testified the plaintiff's participation in sports activities while at college "could have aggravated the injury or made it worse." *Id*. at 145.

After hearing the evidence, the jury awarded the plaintiff only a portion of the past medical expenses she sought. The plaintiff then moved for judgment notwithstanding the verdict to recover her full amount of medical expenses. *Id*. at 144. The trial court granted the motion and awarded the full amount of past medical expenses. *Id.* at 143. The defendant appealed.

This Court concluded more than a scintilla of evidence existed to support the jury's finding that the plaintiff was not entitled to all of the past medical expenses. *Id*. at 145. As we stated, "The evidence supports a finding that, by participating in physical activities at college and failing to seek medical care for more than a year, [the plaintiff] may have caused some of the damage to her elbow for which she received medical treatment." *Id*.

In *Ponce*, the defendant ran over the plaintiff's foot and brushed her leg with her automobile. 68 S.W.3d at 802. At the emergency room, medical personnel noted the injury from the accident appeared to be "minimal," but the plaintiff's blood pressure was elevated and she was diagnosed with hypertension. *Id*. at 802–03. Thereafter, the plaintiff returned to the emergency room several times with symptoms of high blood pressure and was hospitalized at one point.

At trial, a doctor testified that in his opinion, to a reasonable medical probability, the plaintiff's hypertension was caused by the accident. He said her medical expenses related to her multiple visits to the emergency room, hospitalization, and prescriptions for blood pressure

medication were related to the accident and that she would incur additional medical expenses related to high blood pressure in the future. *Id*. at 803. He also testified, however, there were other causes for hypertension, the major being unknown. He agreed that although the plaintiff did not report a prior history, there was no way of being certain whether she was hypertensive before the accident without having had her blood pressure tested. *Id.* at 808.

After hearing the evidence, the jury awarded only a portion of what the plaintiff requested for past medical expenses and awarded zero for future medical expenses. The trial court granted plaintiff's motion for judgment notwithstanding the verdict and awarded the full sum of past medical expenses as well as an amount for future medical expenses. *Id*. at 804.

The court of appeals reversed, explaining that the opinion of the doctor, as an expert witness, was not conclusive on the issues of the causal relationship of all of the plaintiff's medical conditions or expenses to the occurrence, past or future. *Id*. at 808. Rather, the doctor's opinions were "only evidentiary" on those issues, and the jury was "free to disregard his opinion on such matters as they considered and weighed all of the evidence and judged the appearance and credibility of the witnesses, including [the doctor], and the weight to give the different parts of the evidence and testimony." *Id.*

We see no discernible difference between the facts presented in this case and those in *Bullard*. Similar to the plaintiff in *Bullard,* Davis received no treatment for more than a year and, during that time, took on a physically demanding job. When he returned to Dr. Smith, Smith noted that Davis suffered a "re-exacerbation due to his increased activity at his new job." And for the reasons expressed in *Ponce*, we agree the chiropractor's testimony as it related to the causal relationship of Davis's medical condition or expenses to the accident was not conclusive on the jury. We therefore conclude the trial court erred in granting a directed verdict on

damages.  In reaching this conclusion, we reject Davis's argument that Gracia conceded the issue of past medical expenses.  Davis relies on the following excerpt of Gracia's testimony:

> [PLAINTIFF'S COUNSEL]:  Now, on Plaintiff's Exhibit No. 2, you see the summary of the past medical expenses, correct?
>
> [GRACIA]:  Okay.
>
> [PLAINTIFF'S COUNSEL]:  And you understand they're already proven to be reasonable and necessary, correct?
>
> [GRACIA]:  Yes, sir.
>
> [PLAINTIFF'S COUNSEL]:  And you heard Dr. Smith's testimony that they were all proximately caused by the automobile collision, correct?
>
> [GRACIA]:  Yes, sir.
>
> [PLAINTIFF'S COUNSEL]:  It would be reasonable to have a jury award those expenses against you, wouldn't it?
>
> [GRACIA]:  Yes, sir.

We do not read this testimony as broadly as Davis.  Gracia did not testify the jury should award Davis the entire amount in past medical expenses, only that it would be reasonable for the jury to do so.  While we agree it would be reasonable for the jury to award the full expenses, the jury never had that opportunity.  Rather, despite the fact there was other evidence, outlined previously, to support an award of less than all the expenses, the trial court did not submit the issue to the jury.

To the extent Davis asserts Gracia's counsel agreed in pretrial conference that the past medical expenses were not in dispute, we again disagree.  During a discussion concerning the admission of certain exhibits, Gracia's counsel objected to the calculation of past lost wages. When the trial court brought up past medical expenses, Davis's counsel replied, "Well, they've agreed to that."  This was not admission by Gracia's counsel.  Moreover, even if Davis's counsel was correct and Gracia's counsel agreed to the amount of past medical expenses, it is not an admission that all of the expenses were caused by the accident.

–8–

Having concluded the trial court erred, we must now determine the correct disposition of the appeal. If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. TEX. R. APP. P. 44.1(b). The court may not order a separate trial solely on unliquidated damages if liability is contested. *Id.*

Here, Gracia conceded liability at trial. He argues, however, that the error in this case tainted the entire verdict and we must therefore reverse for an entirely new trial on damages. In his response, Davis argues the error "could easily be rectified by a small remittitur" and offered to "remit" the amount of expenses related to the second round of treatment. He relies on rule of appellate procedure 46.3, which provides that a court of appeals may suggest a remittitur. TEX. R. APP. P. 46.3. Alternatively, Davis argues if we deem it necessary to reverse for a new trial, we should limit the scope to the discrete issue of past medical expenses.

First, we note that suggestion of remittitur is not an appropriate remedy in this case. It is well-established that the proper appellate remedy for an error in granting a directed verdict is reversal and remand. *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 304 (Tex. 1988) ("If the appellate court finds that there is any evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue."). The question we decide is the scope of the remand for new trial.

When the trial court granted the directed verdict on past medical expenses, it had the full amount typed into the blank designated for "[m]edical care expenses incurred in the past." When reading the charge to the jury, the court instructed as follows, "medical care expenses incurred in the past. That amount has already been determined. That is $17,400[.]" The amount was equal to all past medical expenses claimed by Davis, including those after which there was a thirteen-month gap in treatment. Thus, the trial court effectively told the jury that all of Davis's

injuries and medical expenses resulted from the accident.  We cannot conclude this error did not impact the jury's remaining answers to other elements of past and future damages.  We sustain Gracia's first and second issues.  Our disposition of these issues makes it unnecessary to address his third issue.

We reverse the trial court's judgment and remand for a new trial on all damages.

/Molly Francis/

MOLLY FRANCIS

121147F.P05

JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESUS GRACIA, Appellant

No. 05-12-01147-CV     V.

CURTIS DAVIS, Appellee

On Appeal from the County Court at Law
No. 1, Dallas County, Texas
Trial Court Cause No. CC-09-08253-A.
Opinion delivered by Justice Francis;
Justices Lang-Miers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial on all damages.

It is **ORDERED** that appellant JESUS GRACIA recover his costs of this appeal from appellee CURTIS DAVIS.

Judgment entered February 13, 2014

/Molly Francis/

MOLLY FRANCIS
JUSTICE