Dan J. KENT and Betty Royce
Kent, Appellants,

v.

CITIZENS STATE BANK,
Woodville, Appellee.

No. 09–02–209 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 20, 2003.

Decided Feb. 27, 2003.

Don Duran, Lufkin, for appellants.

John H. Seale, Seale, Stover, Bisbey & Morian, Jasper, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE MCKEITHEN, Chief Justice.

Dan J. Kent and Betty Royce Kent ("the Kents") sued Citizens State Bank, Woodville, ("Citizens") and Bluebonnet Investments, Ltd., ("Bluebonnet") on tort and breach of contract theories in connection with a real estate financing transaction. This Court reversed the defendants' summary judgment[1] and on remand the case was tried to a jury. The trial court granted the motion for directed verdict of Citizens, and charged the jury on Bluebonnet's breach of contract. The jury did not find that Bluebonnet failed to comply with the loan agreement, and the trial court entered a take nothing judgment. The Kents appealed, but voluntarily dismissed their appeal as to Bluebonnet before submission. On appeal, the appellants present two issues that challenge the trial court's directed verdict for Citizens on the Kents' cause of action for breach of contract.

■ To recover for breach of contract, one must show: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach. *Palmer v. Espey Huston & Assocs., Inc.,* 84 S.W.3d 345, 353 (Tex.App.-Corpus Christi 2002, pet. denied). The Kents' live pleading stated their cause of action for breach of contract, as follows:

Beginning on March 29, 1989, [the Kents] and [Citizens], entered into a contractual relationship through the documents attached hereto as Exhibits "A", "B" and "C". By virtue of said relationship, [the Kents] had the express right to repurchase the real property described on Exhibit "D" for the amount due under the Note. [Bluebonnet] purchased said real property and became successors to [Citizen's] obligations to [the Kents] under the documents.... [The Kents] fully performed their obligations under the contracts in that they tendered the full and complete payoff of the Note on or before June 18, 1991. However, [Citizens and Bluebonnet] breached their obligation when they refused to accept [the Kents'] tender of said money. [The Kents] continued their offer but [Citizens and Bluebonnet] have failed and refused and continue to refuse to execute the conveyance agreed upon.

[Citizens and Bluebonnet] further breached their obligation when they

a. demanded that [the Kents] pay 18% interest after maturity when the note provided that interest after maturity was a lesser amount,

b. Required that [the Kents] pay realtor commissions or secure releases from realtors when the written agreements between [the Kents] and [Citizens and Bluebonnet] did not require [the Kents] to pay realtor commissions and in fact none were due,

c. Required that [the Kents] execute releases releasing [Citizens and Bluebonnet] from any liability resulting from these transactions, and when [Citizens and Bluebonnet] did not make every reasonable effort to sell the properties either separately or together at the prevailing market value at

1. *Kent v. Bluebonnet Invs., Ltd.,* No. 09-96-00395 CV, 1998 WL 306756 (Tex.App.-Beaumont June 11, 1998, pet. denied)(not reported for publication).

that time pursuant to their obligations under the Loan Agreement.

When reviewing a directed verdict, we consider all the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all evidence and inferences to the contrary. *Qantel Bus. Sys. v. Custom Controls*, 761 S.W.2d 302, 303–04 (Tex. 1988). If there is any evidence of probative value which raises a material fact, the judgment must be reversed and the case remanded for the jury's determination on that issue. *Id.* A directed verdict is proper when the plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex.2000). The Kents pleaded, and argue on appeal, that their breach of contract cause of action against Citizens should have been submitted to the jury because they presented evidence of a loan agreement with Citizens, that they tendered performance by presenting a check to Citizens on June 18, 1990, that Citizens breached the agreement by refusing that tender, and that the Kents were damaged in that they lost the value of the property.

The Kents were in default on two loan obligations to Citizens. In order to avoid foreclosure, the Kents executed a $200,233.99 Renewal, Extension and Consolidation Note on March 30, 1989. The note called for a prematurity rate of 1% over prime and a postmaturity rate of 1% above the prematurity rate. A Loan Agreement executed the same day provided for interest on default at the highest rate permitted by applicable law. At the time, the maximum lawful rate was 18%. It also provided that the agreement would inure to the benefit of and be binding on the parties, their successors and assigns, but that the borrowers' rights, duties and obligations were not assignable absent the lender's consent. The Kents contemporaneously executed a deed in lieu of foreclosure. The Loan Agreement provided that, in the event of default by the Kents, the deed would be recorded and Citizens would list the properties with a realtor for 12 months, make every effort to sell the properties at the prevailing market value, and pay to the Kents "any surplus received above all obligations and costs owed" to Citizens. Thereafter, the bank would be under no obligation to pay any surplus to the Kents. When the loan matured on March 30, 1990, the Kents did not pay the note and Citizens filed the deed that conveyed the property from the Kents to Citizens. A June 19, 1990, letter from Citizen's counsel notified Kent that Citizens intended to go forward with efforts to sell the property, and that the twelve-month period for sale of the property would commence June 19, 1990, and end June 18, 1991.

Citizens conveyed the property to Bluebonnet on June 29, 1990, for $235,537.88. Bluebonnet executed an indemnity agreement and accepted the property subject to any agreements between Citizens and the Kents. Citizens expressly transferred to Bluebonnet all of its rights under the agreements with the Kents. Bluebonnet succeeded to the rights and obligations of Citizens. The Kent's live pleading alleged, "[Bluebonnet], as [Citizens'] successor and assignee, assumed all of [Citizen's] obligations to [the Kents] under the Loan Agreement." Assertions of fact in the live pleadings of a party not pleaded in the alternative are regarded as formal judicial admissions and, as such, are conclusively established without the necessity of other evidence. *Houston First American Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983). Thus, Bluebonnet's status as a successor and as-

signee of Citizens was not a contested issue at trial.

The Kents obtained a potential buyer for the property, named Tom Hanks.[2] Hanks negotiated directly with Bluebonnet. Negotiations broke down, however, over the Kents' refusal to obtain releases from the realtors with whom the property had been listed, Bluebonnet's insistence that the purchase price be calculated using an 18% postmaturity interest rate, and Bluebonnet's demand that the Kents release it from any liability resulting from the transaction. A June 13, 1991, letter from the attorney for Citizens and Bluebonnet to the Kents' counsel instructed Kent to deliver to Bluebonnet's general partner at 510 North Valley Mills Drive, Waco, Texas, 76710, a cashier's check for $287,973.36, payable to Bluebonnet Investments, Ltd., along with executed releases from the realtors. Hanks procured a cashier's check for $287,973.36, payable to Citizens State Bank. Dan Kent took the $287,973.36 check to Citizens State Bank, Woodville, on June 17, 1991, but Citizens refused to accept the check because it no longer held the note.

The Kents argue, "Appellee wrongfully refused Appellants' tender of the balance due on the note." On June 17, 1991, Citizens did not have a right to the tendered funds, and could not have conveyed the property to Hanks. The Kents argue, "There is no evidence that Appellee assigned the note to Bluebonnet, endorsed the note to Bluebonnet, sold the note to Bluebonnet or did anything other than sell the property to Bluebonnet at an amount less than market value." That statement is not accurate. James Hill, who at the time of the transaction was Citizen's president, testified that Citizens no longer held the note in 1991. Bluebonnet's general partner, Robert Mann, testified that Bluebonnet took over the bank's position, whether as note holder or fee simple title owner. And Dan Kent testified that when he called Hill for a payoff, Hill told him that they no longer owned the note. Kent then called Mann, "since he bought the Note." More to the point, the Kents did not sue Citizens for breach of contract for conveying the property to Bluebonnet in 1990 for less than market value. Rather, they sued Citizens for breach of contract for failing to reconvey the property in 1991. The Kents argue, "Appellee had obligations to Appellants pursuant to the Loan Agreement, from which it was never released by Appellants. The Loan Agreement was never modified in writing as required by paragraph 5.15 of the Loan Agreement, to change the place for payment or change the entity to whom payment was required by Appellants. More important, the Loan Agreement was never modified in writing to relieve Appellee of its obligations to Appellants." The non-assignability clause in the loan agreement was limited to the Borrower, the Kents, and did not limit Citizen's rights of assignment. Furthermore, the Kents were notified in writing to remit $287,973.36, payable to Bluebonnet Investments, Ltd., and delivered to Robert A. Mann, General Partner of Bluebonnet Investments, Ltd., at 510 North Valley Mills Drive, Waco, Texas. They did not comply with those instructions.

The Kents argue that they adduced evidence of a contract with Citizens, namely the loan agreement, and that the paragraph 3.3(b) of the loan agreement "establishes Appellants' right to pay the balance

---

**2.** The Kents and Hanks executed a letter agreement, whereby Hanks would convey part of the property to the Kents and the Kents would partially reimburse Hanks out of damages recovered from the potential lawsuit. Neither Citizens nor Bluebonnet was aware of this agreement until after Dan Kent's deposition in this litigation.

due on the note plus other expenses, and have the property, which was the collateral, returned to them." Actually, the Loan Agreement merely obligated the lender to pay any surplus over the balance due on the note, plus expenses, to the Kents. The deed in lieu of foreclosure was filed after the note matured, in the manner provided by the terms of the contract. The 1990 transaction between Citizens and Bluebonnet did not generate surplus funds above the obligations and costs of the bank. There is some evidence that a purchase price of $287,973.36 would have exceeded the obligations and costs of the bank, triggering the Kents' right to recover excess proceeds received from the sale had the transaction closed. The $287,973.36 purchase price was set by Bluebonnet, not by Citizens. Bluebonnet was obligated on the contract, and the issue of its breach was submitted to the jury in the charge. The jury failed to find a breach by Bluebonnet and that finding is not challenged on appeal. Even if imputed to Citizens, the actions of Bluebonnet cannot supply the element of breach in the face of an unchallenged jury finding that Bluebonnet did not fail to comply with the loan agreement. *See Wilson v. Texas Parks and Wildlife Dept.*, 853 S.W.2d 825, 832 (Tex.App.-Austin 1993), *rev'd on other grounds*, 886 S.W.2d 259 (Tex.1994)(Unchallenged jury findings are binding on appeal.).

We conclude there is no evidence that raises a material fact on the alleged breach of contract between Citizens and the appellants. Therefore, the trial court did not err in granting Citizens State Bank, Woodville's motion for directed verdict. Issues one and two are overruled. The judgment of the trial court is affirmed.

AFFIRMED.