In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-209 CV


____________________



DAN J. KENT AND BETTY ROYCE KENT, Appellants



V.



CITIZENS STATE BANK, WOODVILLE, Appellee






On Appeal from the 88th District Court


Tyler County, Texas


Trial Cause No. 14,272






OPINION


 Dan J. Kent and Betty Royce Kent ("the Kents") sued Citizens State Bank,
Woodville, ("Citizens") and Bluebonnet Investments, Ltd., ("Bluebonnet") on tort and
breach of contract theories in connection with a real estate financing transaction. This
Court reversed the defendants' summary judgment (1) and on remand the case was tried to
a jury. The trial court granted the motion for directed verdict of Citizens, and charged the
jury on Bluebonnet's breach of contract. The jury did not find that Bluebonnet failed to
comply with the loan agreement, and the trial court entered a take nothing judgment. The
Kents appealed, but voluntarily dismissed their appeal as to Bluebonnet before submission. 
On appeal, the appellants present two issues that challenge the trial court's directed verdict
for Citizens on the Kents' cause of action for breach of contract. 

 To recover for breach of contract, one must show: 1) the existence of a valid
contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract
by the defendant; and 4) damages to the plaintiff resulting from the breach. Palmer v.
Espey Huston & Assocs., Inc., 84 S.W.3d 345, 353 (Tex. App.--Corpus Christi 2002, pet.
denied). The Kents' live pleading stated their cause of action for breach of contract, as
follows:

 Beginning on March 29, 1989, [the Kents] and [Citizens], entered into
a contractual relationship through the documents attached hereto as Exhibits
"A", "B" and "C". By virtue of said relationship, [the Kents] had the
express right to repurchase the real property described on Exhibit "D" for
the amount due under the Note. [Bluebonnet] purchased said real property
and became successors to [Citizen's] obligations to [the Kents] under the
documents. . . . [The Kents] fully performed their obligations under the
contracts in that they tendered the full and complete payoff of the Note on
or before June 18, 1991. However, [Citizens and Bluebonnet] breached
their obligation when they refused to accept [the Kents'] tender of said
money. [The Kents] continued their offer but [Citizens and Bluebonnet] have
failed and refused and continue to refuse to execute the conveyance agreed
upon.


 [Citizens and Bluebonnet] further breached their obligation when they 



 demanded that [the Kents] pay 18% interest after
maturity when the note provided that interest
after maturity was a lesser amount, 
 Required that [the Kents] pay realtor
commissions or secure releases from realtors
when the written agreements between [the Kents]
and [Citizens and Bluebonnet] did not require
[the Kents] to pay realtor commissions and in
fact none were due, 
 Required that [the Kents] execute releases
releasing [Citizens and Bluebonnet] from any
liability resulting from these transactions, and
when [Citizens and Bluebonnet] did not make
every reasonable effort to sell the properties
either separately or together at the prevailing
market value at that time pursuant to their
obligations under the Loan Agreement. 



 When reviewing a directed verdict, we consider all the evidence in the light most
favorable to the party against whom the verdict was rendered and disregard all evidence
and inferences to the contrary. Qantel Bus. Sys. v. Custom Controls, 761 S.W.2d 302,
303-04 (Tex. 1988). If there is any evidence of probative value which raises a material
fact, the judgment must be reversed and the case remanded for the jury's determination on
that issue. Id. A directed verdict is proper when the plaintiff fails to present evidence
raising a fact issue essential to the plaintiff's right of recovery. Prudential Ins. Co. of
America v. Financial Review Services, Inc., 29 S.W.3d 74, 77 (Tex. 2000). The Kents
pleaded, and argue on appeal, that their breach of contract cause of action against Citizens
should have been submitted to the jury because they presented evidence of a loan
agreement with Citizens, that they tendered performance by presenting a check to Citizens
on June 18, 1990, that Citizens breached the agreement by refusing that tender, and that
the Kents were damaged in that they lost the value of the property. 

 The Kents were in default on two loan obligations to Citizens. In order to avoid
foreclosure, the Kents executed a $200,233.99 Renewal, Extension and Consolidation Note
on March 30, 1989. The note called for a prematurity rate of 1% over prime and a
postmaturity rate of 1% above the prematurity rate. A Loan Agreement executed the same
day provided for interest on default at the highest rate permitted by applicable law. At the
time, the maximum lawful rate was 18%. It also provided that the agreement would inure
to the benefit of and be binding on the parties, their successors and assigns, but that the
borrowers' rights, duties and obligations were not assignable absent the lender's consent.
The Kents contemporaneously executed a deed in lieu of foreclosure. The Loan
Agreement provided that, in the event of default by the Kents, the deed would be recorded
and Citizens would list the properties with a realtor for 12 months, make every effort to
sell the properties at the prevailing market value, and pay to the Kents "any surplus
received above all obligations and costs owed" to Citizens. Thereafter, the bank would
be under no obligation to pay any surplus to the Kents. When the loan matured on March
30, 1990, the Kents did not pay the note and Citizens filed the deed that conveyed the
property from the Kents to Citizens. A June 19, 1990, letter from Citizen's counsel
notified Kent that Citizens intended to go forward with efforts to sell the property, and that
the twelve-month period for sale of the property would commence June 19, 1990, and end
June 18, 1991. 

 Citizens conveyed the property to Bluebonnet on June 29, 1990, for $235,537.88.
Bluebonnet executed an indemnity agreement and accepted the property subject to any
agreements between Citizens and the Kents. Citizens expressly transferred to Bluebonnet
all of its rights under the agreements with the Kents. Bluebonnet succeeded to the rights
and obligations of Citizens. The Kent's live pleading alleged, "[Bluebonnet], as [Citizens']
successor and assignee, assumed all of [Citizen's] obligations to [the Kents] under the Loan
Agreement." Assertions of fact in the live pleadings of a party not pleaded in the
alternative are regarded as formal judicial admissions and, as such, are conclusively
established without the necessity of other evidence. Houston First American Sav. v.
Musick, 650 S.W.2d 764, 767 (Tex. 1983). Thus, Bluebonnet's status as a successor and
assignee of Citizens was not a contested issue at trial. 

 The Kents obtained a potential buyer for the property, named Tom Hanks. (2) Hanks
negotiated directly with Bluebonnet. Negotiations broke down, however, over the Kents'
refusal to obtain releases from the realtors with whom the property had been listed,
Bluebonnet's insistence that the purchase price be calculated using an 18% postmaturity
interest rate, and Bluebonnet's demand that the Kents release it from any liability resulting
from the transaction. A June 13, 1991, letter from the attorney for Citizens and
Bluebonnet to the Kents' counsel instructed Kent to deliver to Bluebonnet's general partner
at 510 North Valley Mills Drive, Waco, Texas, 76710, a cashier's check for $287,973.36,
payable to Bluebonnet Investments, Ltd., along with executed releases from the realtors.
Hanks procured a cashier's check for $287,973.36, payable to Citizens State Bank. Dan
Kent took the $287,973.36 check to Citizens State Bank, Woodville, on June 17, 1991, but
Citizens refused to accept the check because it no longer held the note. 

 The Kents argue, "Appellee wrongfully refused Appellants' tender of the balance
due on the note." On June 17, 1991, Citizens did not have a right to the tendered funds,
and could not have conveyed the property to Hanks. The Kents argue, "There is no
evidence that Appellee assigned the note to Bluebonnet, endorsed the note to Bluebonnet,
sold the note to Bluebonnet or did anything other than sell the property to Bluebonnet at
an amount less than market value." That statement is not accurate. James Hill, who at
the time of the transaction was Citizen's president, testified that Citizens no longer held
the note in 1991. Bluebonnet's general partner, Robert Mann, testified that Bluebonnet
took over the bank's position, whether as note holder or fee simple title owner. And Dan
Kent testified that when he called Hill for a payoff, Hill told him that they no longer owned
the note. Kent then called Mann, "since he bought the Note." More to the point, the
Kents did not sue Citizens for breach of contract for conveying the property to Bluebonnet
in 1990 for less than market value. Rather, they sued Citizens for breach of contract for
failing to reconvey the property in 1991. The Kents argue, "Appellee had obligations to
Appellants pursuant to the Loan Agreement, from which it was never released by
Appellants. The Loan Agreement was never modified in writing as required by paragraph
5.15 of the Loan Agreement, to change the place for payment or change the entity to
whom payment was required by Appellants. More important, the Loan Agreement was
never modified in writing to relieve Appellee of its obligations to Appellants." The non-assignability clause in the loan agreement was limited to the Borrower, the Kents, and did
not limit Citizen's rights of assignment. Furthermore, the Kents were notified in writing
to remit $287,973.36, payable to Bluebonnet Investments, Ltd., and delivered to Robert
A. Mann, General Partner of Bluebonnet Investments, Ltd., at 510 North Valley Mills
Drive, Waco, Texas. They did not comply with those instructions. 

 The Kents argue that they adduced evidence of a contract with Citizens, namely the
loan agreement, and that the paragraph 3.3(b) of the loan agreement "establishes
Appellants' right to pay the balance due on the note plus other expenses, and have the
property, which was the collateral, returned to them." Actually, the Loan Agreement
merely obligated the lender to pay any surplus over the balance due on the note, plus
expenses, to the Kents. The deed in lieu of foreclosure was filed after the note matured,
in the manner provided by the terms of the contract. The 1990 transaction between
Citizens and Bluebonnet did not generate surplus funds above the obligations and costs of
the bank. There is some evidence that a purchase price of $287,973.36 would have
exceeded the obligations and costs of the bank, triggering the Kents' right to recover
excess proceeds received from the sale had the transaction closed. The $287,973.36
purchase price was set by Bluebonnet, not by Citizens. Bluebonnet was obligated on the
contract, and the issue of its breach was submitted to the jury in the charge. The jury
failed to find a breach by Bluebonnet and that finding is not challenged on appeal. Even
if imputed to Citizens, the actions of Bluebonnet cannot supply the element of breach in
the face of an unchallenged jury finding that Bluebonnet did not fail to comply with the
loan agreement. See Wilson v. Texas Parks and Wildlife Dept., 853 S.W.2d 825, 832
(Tex. App.--Austin 1993), rev'd on other grounds, 886 S.W.2d 259 (Tex.
1994)(Unchallenged jury findings are binding on appeal.). 

 We conclude there is no evidence that raises a material fact on the alleged breach
of contract between Citizens and the appellants. Therefore, the trial court did not err in
granting Citizens State Bank, Woodville's motion for directed verdict. Issues one and two
are overruled. The judgment of the trial court is affirmed.

 AFFIRMED.


 ___________________________

 STEVE MCKEITHEN

 Chief Justice


Submitted on February 20, 2003

Opinion Delivered February 27, 2003


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. Kent v. Bluebonnet Invs., Ltd., No. 09-96-00395 CV, (Tex. App.--Beaumont June
11, 1998, pet. denied)(not reported for publication). 
2. The Kents and Hanks executed a letter agreement, whereby Hanks would convey
part of the property to the Kents and the Kents would partially reimburse Hanks out of
damages recovered from the potential lawsuit. Neither Citizens nor Bluebonnet was aware
of this agreement until after Dan Kent's deposition in this litigation.