

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00328-CV

———————————————

RACHEL HANNAH HUSKINS, Appellant

V.

MARCUS EVERETT GARCIA, Appellee

---

On Appeal from the 467th District Court
Denton County, Texas
Trial Court No. 21-6190-467

---

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Rachel Huskins appeals the trial court's order denying her application for a protective order against Appellee Marcus Garcia, arguing the denial is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Because we must defer to the trial court's determination of the credibility of the evidence, we affirm the denial.

## I. Background

On July 22, 2021, Huskins filed an application for a protective order asking the trial court to issue a two-year protective order against Garcia. The trial court entered a temporary ex parte protective order against Garcia and set a hearing on Huskins's application. In a separate cause number, Garcia filed an application for a protective order against Huskins.

On September 28, 2021, the trial court heard both applications. At the hearing, Huskins testified that she and Garcia had been in a dating relationship and had lived together from approximately July 2020 until May 2021. Huskins further testified to several incidents involving physical assault, threats, and sexual violence committed by Garcia throughout their dating relationship.

At the close of Huskins's evidence, Garcia moved for a directed verdict[1] on Huskins's application for a protective order. Despite finding "a wealth of evidence"

---

[1]Because there was no jury, this motion should have been labeled a motion for judgment. *See Est. of Pandozy*, No. 05-19-00755-CV, 2021 WL 711500, at *3 (Tex.

that family violence had occurred, the trial court granted Garcia's motion for directed verdict and denied Huskins's application for a protective order, finding that Huskins had not met her burden of proof.[2] *See* Tex. Fam. Code Ann. § 85.001. Garcia then requested a trial amendment to change his application for a protective order to an application for joint mutual injunctions based on an agreement between the parties that incorporated standard "stay away" language. The "stay away" agreement was presented to the trial court on the record, and the trial court ordered the agreement effective as of the date of the hearing, with a written order to follow.[3]

---

App.—Dallas Feb. 22, 2021, no pet.) (mem. op.); *Scott v. Wooley*, No. 02-19-00318-CV, 2020 WL 7063292, at *1 n.1 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem. op.). The distinction is significant because the standards of review for jury trials and bench trials differ. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex. 1988). In a nonjury case, the trial court can grant a motion for judgment on either legal-sufficiency or factual-sufficiency grounds. *Id.* at 304.

[2]The trial court stated that, based on the testimony presented, there was no evidence that Garcia was likely to commit family violence against Huskins in the future. In its written findings of fact and conclusions of law, the trial court found that Huskins and Garcia had been in a dating relationship, that Huskins testified at the protective order hearing as to the abuse committed against her by Garcia, that Garcia had committed acts of family violence against Huskins, and that Garcia did not violate the temporary ex parte order issued on August 6, 2021. Based on these findings, the trial court concluded that Garcia was not likely to commit family violence against Huskins in the future.

[3]*See Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 59 (Tex. 1970) (orig. proceeding) ("A judgment is in fact rendered whenever the trial judge announces his decision in open court . . . whether orally or by written memorandum . . . ."). If there exists a subsequent written order incorporating the parties' "stay away" agreement, it is not in the record. Moreover, it is unclear from the record to which cause number the agreement applies. No party has appealed the trial court's ruling on Garcia's trial amendment or the entry of the "stay away" agreement.

3

On November 8, 2021, the trial court signed an order denying Huskins's application for a protective order, from which Huskins now appeals. On appeal, she contends the trial court's denial of her application for a protective order was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## II. Standards of Review

There is one issue and one issue alone, which is whether the evidence was legally and factually sufficient to support the trial court's order denying Huskins's application for a protective order. When the trial court acts as factfinder, we review its findings under the legal- and factual-sufficiency standards.[4] *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *see also Watts v. Adviento*, No. 02-17-00424-CV, 2019 WL 1388534, at *3 n.3 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (per curiam) (mem. op.) (stating that legal- and factual-sufficiency standards of review are proper in appeals from protective orders); *Jakobe v. Jakobe*, No. 2-04-068-CV, 2005 WL 503124, at *1 n.4 (Tex. App.—Fort Worth Mar. 3, 2005, no pet.) (per curiam) (mem. op.) (measuring the sufficiency of the evidence in protective order appeals by legal- and factual-sufficiency contentions).

---

[4]Based on this court's precedent, we reject Huskins's request that we apply the abuse of discretion standard of review.

## A. Legal Sufficiency

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If no evidence supports the finding, then we will examine the

5

entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

**B. Factual Sufficiency**

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain*, 709 S.W.2d at 176; *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When the party with the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see also Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006) (illustrating the appropriate standard of review).

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). Acting as factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be

6

given to their testimony. *Scott*, 2020 WL 7063292, at *4. On appeal, we must defer to the trial court's credibility determinations. *Id.* at *3. Indeed, an appellate court must not substitute its judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

### III. Analysis

Under the Texas Family Code, a trial court shall render a protective order if, at the close of a hearing on the application for a protective order, the court finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. §§ 81.001, 85.001. Here, the evidence does not establish as a matter of law that family violence is likely to occur in the future, and the trial court's failure to find that family violence is likely to occur in the future is not against the great weight and preponderance of the credible evidence.

After the hearing on Huskins's application for a protective order, the trial court concluded that, although there was "a wealth of evidence" that family violence had occurred in the past, there was no evidence that family violence was likely to occur in the future. Evidence of past abusive conduct permits an inference that violent behavior will continue in the future. *Hassan v. Hassan*, No. 14-17-00179-CV, 2018 WL 3061320, at *2 (Tex. App.—Houston [14th Dist.] June 21, 2018, no pet.) (mem. op.) (citing *In re Epperson*, 213 S.W.3d 541, 543 (Tex. App.—Texarkana 2007, no pet.)). However, this inference is not mandatory. *Scott*, 2020 WL 7063292, at *4 n.8; *Hassan*, 2018 WL 3061320, at *2. A trial court is thus not required to find "that a person will

7

continue violent behavior in the future because of past violence." *Hassan*, 2018 WL 3061320, at *2 (quoting *Gonzalez v. Galvan*, No. 13-08-488-CV, 2009 WL 1089472, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2009, no pet.) (mem. op.)); *see also Scott*, 2020 WL 7063292, at *4 n.8 (stating that a finding of past violence "would not have required the trial court to make a future-violence finding in the absence of other evidence of that likelihood").

At the hearing on her application for a protective order, Huskins testified to several instances of family violence that had occurred during her relationship with Garcia. Huskins's testimony described Garcia's past acts of physical and verbal abuse, and photographs admitted into evidence show bruising and redness on her face, neck, arm, and ribs. Although the trial court could not deny that this "wealth of evidence" shows that family violence had occurred, this evidence alone did not require the trial court to find that Garcia would engage in family violence in the future. *See Hassan*, 2018 WL 3061320, at *2; *Gonzalez*, 2009 WL 1089472, at *2; *Epperson*, 213 S.W.3d at 543. We therefore cannot say that a likelihood of future violence is conclusively established by the evidence of Garcia's past violent acts.

Further, Huskins testified that Garcia had not attempted to contact her directly since July 23, 2021, and that he had not communicated with her, even after the temporary ex parte order was no longer in place. Additionally, Garcia had moved to south Texas, which was an eight-hour drive from the city in which Huskins resided. And Huskins testified that she believed Garcia would stay away from her and would

8

not contact her, if the trial court ordered him to do so.[5] When viewed in the light most favorable to the trial court's finding, and indulging "every reasonable inference deducible" from it, we cannot say that this evidence establishes conclusively the opposite of a vital fact, nor can we say that the record bears no evidence of a vital fact. *See Gunn*, 554 S.W.3d at 658; *Cent. Ready Mix Concrete Co.*, 228 S.W.3d at 651; *City of Keller*, 168 S.W.3d at 827. In other words, a reasonable factfinder could consider this evidence and reasonably infer from it that family violence was not likely to occur in the future—a vital fact when determining whether to issue a protective order.

---

[5]The trial court subsequently ordered Garcia to stay away from Huskins and to not contact her. At the close of the hearing, the trial court ordered the "stay away" agreement between the parties effective as of the date of the hearing. Per the agreement, Huskins and Garcia may not (1) communicate; (2) come within 100 yards of each other's home or workplace; (3) communicate via social media; (4) post anything to social media about the other party; or (5) attempt to gain information about the other party. Huskins and Garcia acknowledged on the record that the agreement is permanent and that any violation of its terms could result in a monetary fine or confinement in jail.

Huskins appeals from the trial court's order denying her application for a protective order, which the trial court signed approximately forty days after the hearing. Although the trial court denied Huskins's application for a protective order on the record at the hearing, the parties' "stay away" agreement was in effect when the trial court signed its order denying the application.

We also note that the "stay away" agreement does not moot this appeal, as the agreement did not fully resolve the controversy between the parties or address all issues raised in Huskins's application for a protective order. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002). For example, the "stay away" agreement did not resolve the issues of Huskins's request for attorney's fees or Garcia's possession of a firearm.

Although Huskins testified that she was afraid of Garcia and feared future harm from him, the trial court was "the sole judge of [Huskins's] credibility and the weight to be given to her testimony." *Scott*, 2020 WL 7063292, at *4; *see also City of Keller*, 168 S.W.3d at 819 (stating that the factfinder is the sole judge of the credibility of witnesses and the weight to give their testimony). We cannot substitute our opinion or judgment for that of the trial court and determine that we would have granted Huskins's application for a protective order. *See City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery*, 116 S.W.3d at 761; *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Indeed, this is a credibility issue, and that determination belongs exclusively to the trial court as factfinder, not to this court. *See Golden Eagle Archery*, 116 S.W.3d at 761.

The trial court had the opportunity to hear Huskins's testimony and view all evidence first-hand, and the trial court obviously did not believe that Garcia's past acts—several instances of family violence—necessarily translated into evidence that Garcia would commit future acts of violence against Huskins. *See Gonzalez*, 2009 WL 1089472, at *3. Accordingly, deferring as we must to the trial court's determination of Huskins's credibility and the weight of all evidence presented, we cannot say that the trial court's finding regarding future family violence was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 242; *Cain*, 709 S.W.2d at 176; *Scott*, 2020 WL 7063292, at *5. We therefore overrule Huskins's only issue.

10

### III. Conclusion

Having overruled Huskins's sole issue, we affirm the trial court's November 8, 2021 order denying Huskins's application for a protective order.[6]

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 31, 2022

---

[6]Huskins filed Appellant's Objections and Motions to Strike Appellee's Brief, which has been carried with the case. The court has considered the motion and Garcia's response and is of the opinion that relief should be denied. Accordingly, Huskins's motion is denied.