In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00295-CV

_____

**LOWELL PLEASANT, Appellant**

**V.**

**MURPHY OIL USA, INC. D/B/A MURPHY USA #7335, Appellee**

_____

**On Appeal from the County Court at Law No. 6**
**Montgomery County, Texas**
**Trial Cause No. 22-05-06527-CV**
_____

**MEMORANDUM OPINION**

Appellant Lowell Pleasant[1] appeals the trial court's Order Granting

Defendant's Motion for Directed Verdict and Final Judgment, finding that Pleasant

failed to provide sufficient evidence to prove all the elements of his claim under the

---

[1] The record reflects that Lowell Pleasant is also known as Priest Pleasant.

1

Texas Deceptive Trade Practices Act ("DTPA").[2] In his sole issue, Pleasant complains the trial court erred by granting a directed verdict in favor of Appellee Murphy Oil USA, Inc. d/b/a/ Murphy USA #7335 ("Murphy Oil") because he provided a scintilla of evidence that Murphy Oil breached the implied warranty of merchantability as to diesel fuel Pleasant purchased from Murphy Oil. For the reasons explained below, we affirm the trial court's Order and Final Judgment.

## BACKGROUND

In May 2022, Pleasant filed suit against Murphy Oil alleging that Murphy Oil's misrepresentations, breaches of warranties, and unconscionable conduct violated the DTPA. Pleasant pleaded that after fueling up his truck with diesel fuel he purchased from Murphy Oil on May 24, 2020, he drove 100 yards and parked for the night, and the next day his engine would not start. Pleasant pleaded that Brent's Diesel inspected his truck and determined that the fuel tank was contaminated with water and the engine needed to be replaced. Pleasant stated he submitted a Fuel Service Report Form to Murphy Oil along with the required documentation, but Murphy Oil rejected his claim.

---

[2] Since this case was not tried before a jury, we construe the motion for directed verdict requested by Murphy Oil USA, Inc. d/b/a/ Murphy USA #7335 ("Murphy Oil") as a motion for judgment. *See Braden v. Kirkland*, No. 09-04-077-CV, 2004 WL 2365176, at *1 & n.1 (Tex. App.—Beaumont Oct. 21, 2004, no pet.) (mem. op.) (citing *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303-04 (Tex. 1988)).

Pleasant alleged that Murphy Oil violated the DTPA by: (1) representing that the goods or services had characteristics, ingredients, uses or benefits which they did not have; (2) representing that goods or services were of a particular standard, quality, or grade when they were of another; and (3) failing to disclose information concerning goods or services that was known at the time in order to induce him to enter into a transaction he would not have otherwise entered. Pleasant alleged that he relied on Murphy Oil's representations to his detriment. Pleasant also alleged that Murphy Oil breached one or more warranties and that its conduct, which was committed knowingly, was a producing cause of his damages.

The clerk's record includes a letter from Michal Smith, SR Claims Specialist II with Helmsman Management Services LLC, to Pleasant's counsel stating that Pleasant's claim was denied based on the determination that Murphy Oil was not legally responsible for the damage to Pleasant's vehicle. Smith explained that Murphy Oil found no evidence that any contaminated fuel was sold to their customers, and Pleasant failed to provide such evidence.

The trial court conducted a bench trial, during which the trial court admitted the parties' exhibits without objection. The exhibits included, among other documents: Pleasant's May 24, 2020 receipt from Murphy Oil for the purchase of $20 of diesel fuel; Pleasant's Fuel Service Report Form, which was not signed and dated by a mechanic and did not include the required Repair Estimate/Invoice;

3

Pleasant's Complaint Form to the Texas Department of Licensing and Regulation; Murphy Oil's May 17, 2020 fuel delivery receipt from Phillips 66; Murphy Oil's sales records for May 2020; September 16, 2020 letter from the Texas Department of Licensing and Regulation to Murphy Oil stating their investigation of Pleasant's claim showed there was zero water in Murphy Oil's tank leveling system from May 22 through May 25, 2020; Cindy Hobb's November 6, 2020 email stating Murphy Oil's internal investigation shows it sold 351.33 gallons of diesel to 18 customers on May 24, 2020 and Pleasant was the only customer who filed a bad gas claim; November 10, 2020 letter from Smith to defense counsel stating Pleasant's claim was denied due to no evidence of fuel contamination; and evidence of Pleasant's alleged damages.

During trial, Pleasant testified that on May 24, 2020, he bought $20 of diesel fuel from Murphy Oil and then drove half a mile and parked his truck for about 24 hours. Pleasant explained that his truck had a "lock cap" and it was not raining when he filled his truck up. Pleasant testified that the next day after spending about four hours trying to start his truck, he had a wrecker service tow the truck to Brent's Diesel and Automotive Service ("Brent's Diesel").

Pleasant explained that Brent's Diesel found water in his fuel tank, but he was unable to pay for the needed repairs to fix the truck due to his finances. Pleasant's evidence shows his vehicle was towed to Brent's Diesel on May 25, 2020. Pleasant

presented a video taken on May 27, 2020, and explained that the voice on the video was Brent, the owner, and that the reason for the delayed video was that Brent was "trying to figure out what the next step was[]" and "[h]e didn't have room to park my vehicle on the property, so I had to get it towed to another location." Pleasant's evidence shows that Brent's Diesel did not give Pleasant a Repair Order until July 24, 2020, which was two months after Pleasant purchased the diesel from Murphy Oil. Brent's Diesel's Repair Order shows Brent's Diesel inspected Pleasant's "vehicle and found vehicle full of water[,]" and Pleasant "declined all repairs at this time." The needed repairs listed in Brent's Diesel's Repair Order included dropping the fuel tank; emptying and cleaning fuel tank and all lines; replacing fuel pump, regulator, injectors, and filters.

Pleasant testified that he filled out a Fuel Service Report Form concerning the diesel fuel he bought on May 24, 2020, and he emailed it to Murphy Oil on May 28, 2020. Pleasant explained that after filing the Fuel Service Report, he spoke with Cindy Hobbs from Murphy Oil and received a letter from the inspector assigned to his case. A letter dated September 16, 2020, shows the Texas Department of Licensing and Regulation's investigation found zero water in Murphy Oil's fuel storage tanks during the period of May 22 through May 25, 2020. Pleasant's evidence included a July 27, 2021, receipt from 723 Automotive and Diesel, and Pleasant explained that after Brent told him there was no room for Pleasant to park

5

his truck, he went to 723 Automotive and Diesel for a second opinion which also recommended replacing the engine. Pleasant explained he then took the truck back to Brent's Diesel because they had room for it, and he presented an August 11, 2021 Estimate from Brent's Diesel noting that (1) Pleasant requested an estimate for a complete engine replacement; (2) they had not seen the vehicle since July 2020 when it had a fuel system contamination and Pleasant declined the required work; (3) two other shops had looked at the truck; and (4) the truck had sat for a year with water in the system which would require components that would not normally be needed in an engine replacement. Pleasant testified he did not have the money to replace the engine at the time, but he purchased another truck on August 15, 2020 for $2,800 and was still using it.

On cross-examination, Pleasant testified that when he purchased $20 of diesel fuel at Murphy Oil, he had a "little over[]" a quarter tank in his 30- or 40-gallon tank. Pleasant testified he had over half a tank of diesel when he left Murphy Oil and drove half a mile and parked at his girlfriend's apartment complex, and he agreed that half of a 30- or 40-gallon tank would be 15 to 20 gallons of diesel. Pleasant did not dispute that during his deposition, he testified that Brent said there was about 30 gallons of water throughout the whole engine. Pleasant also did not dispute that he testified that Murphy Oil's diesel has "always been the cheapest, so that's probably

6

why I get it" there. Pleasant testified that after the incident, he continued to buy diesel from the same Murphy Oil location.

On redirect, Pleasant testified that he had no reason to believe anyone broke in his truck and put water in his fuel tank. Pleasant testified that he got water in his tank when he purchased the diesel at Murphy Oil. The record shows that Pleasant intended to call Brent to give expert testimony regarding his findings and conclusion that Pleasant's engine had to be replaced due to water in the diesel fuel, but Brent did not testify at trial.

After Pleasant rested his case, Murphy Oil moved for a directed verdict and argued Pleasant failed to prove the essential elements of his DTPA claim. Murphy Oil argued that Pleasant failed to prove that Murphy Oil made any representations to Pleasant that he relied on. Murphy Oil pointed to two of Pleasant's exhibits, which were screen shots of Murphy Oil's website that was accessed over a year after Pleasant purchased the diesel, and argued there was no evidence that Pleasant assessed the website prior to his purchase. Murphy Oil also argued that Pleasant cannot rely on representations on the website that were made after his purchase to hold Murphy Oil liable for making any such representations.

Pleasant argued that Murphy Oil was overlooking his breach of warranty claim for having water in its diesel, and Pleasant pointed to Murphy Oil's Responses to Plaintiff's Second Set of Requests for Admissions, in which Murphy Oil admitted

it provides quality fuels that meets or exceeds government regulations and receive rigorous inspections before transport and that free water in diesel fuel can damage a diesel engine. Murphy Oil responded that Pleasant's Requests for Admissions were from the website and not from a representation made to Pleasant, and Murphy Oil argued that Pleasant did not testify he went to Murphy Oil because of any representations that were made or any warranties. Murphy Oil noted Pleasant's deposition testimony that he probably purchased diesel from Murphy Oil because it had always been the cheapest. Murphy Oil argued there was no evidence of a breach of warranty because while Pleasant proved there was water in his fuel tank, his expert never took the stand and there was no evidence that the water came from the diesel Pleasant purchased from Murphy Oil. Pleasant argued that "[c]ircumstantial evidence shows that if the water couldn't come from any place else, it had to come from Murphy Oil." Pleasant added, "How does it get there? We don't know, okay?"

After the trial court reviewed Pleasant's pleadings, it granted Murphy Oil's directed verdict, finding that Pleasant's evidence is insufficient to prove all the elements of his claim by a preponderance of the evidence.

## ANALYSIS

In his sole issue, Pleasant complains the trial court erred by granting a directed verdict for Murphy Oil because he provided enough circumstantial evidence that the water found in his fuel tank came from Murphy Oil's diesel fuel storage tank.

8

According to Pleasant, a fact question exists on whether Murphy Oil breached its implied warranty of merchantability, and it was Murphy Oil's burden to present evidence that the water did not come from its storage tank. Murphy Oil argues the trial court properly granted its motion for directed verdict because there was insufficient evidence to support Pleasant's claim that Murphy oil breached its implied warranty of merchantability. Murphy Oil argues Pleasant failed to present a scintilla of evidence of a defect such that Murphy Oil's fuel was a producing cause of his damages.

We construe Murphy Oil's motion for directed verdict as a motion for judgment, which is the proper motion to make after the plaintiff rests in a bench trial. *See Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d 839, 841 (Tex. App.—Dallas 2009, no pet.); *Braden v. Kirkland*, No. 09-04-077-CV, 2004 WL 2365176, at *1 & n.1 (Tex. App.—Beaumont Oct. 21, 2004, no pet.) (mem. op.) (citing *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303-04 (Tex. 1988)). As the finder of fact in a bench trial, the trial court may rule on the factual and legal issues at the close of the plaintiff's case in chief. *Qantel Bus. Sys., Inc.*, 761 S.W.2d at 304. When the trial court makes such a ruling, it is presumed to have ruled on both the sufficiency of the evidence and on the weight of the evidence and credibility of the witnesses. *Id.* at 304-05. Thus, when the trial court grants a motion of judgment in a bench trial, we review its judgment under the legal and factual sufficiency standard.

9

*Sims v. Sims*, 623 S.W.3d 47, 64 (Tex. App.—El Paso 2021, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). When, as here, findings of fact are neither requested nor filed, we must uphold the judgment on any theory of law applicable to the case when the evidence supports the trial court's implied findings. *Id.* We only consider the evidence favoring the implied findings and disregard all evidence opposing them. *Id.*

We will sustain a legal sufficiency challenge only if (1) the record reveals a complete absence of evidence of a vital fact; (2) we are barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. We review the evidence in a light most favorable to the challenged finding, crediting any favorable evidence so long as a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821-22. Under a factual sufficiency challenge, we must consider and weigh all the evidence and may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (citations omitted).

On appeal, Pleasant asserts that Murphy Oil breached its implied warranty of merchantability and that the trial court's judgment rests on a finding that he did not

prove the elements of his breach of warranty claim. A consumer may maintain an action for breach of an implied warranty under the DTPA, when the defendant's breach constitutes a producing cause of the plaintiff's economic damages. Tex. Bus. & Com. Code Ann. § 17.50(a)(2). "A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 481 (Tex. 1995). There must be some evidence that the defendant's act or omission was the cause in fact of the plaintiff's injury. *See id.* (citation omitted). To recover on a claim for breach of implied warranty of merchantability, the claimant must prove that the goods were defective when they left the seller's possession. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989); *see* Tex. Bus. & Com. Code Ann. § 2.314. A plaintiff can use circumstantial evidence to meet his burden of showing the goods were unfit for the ordinary purposes for which they were used because of a defect. *Plas-Tex, Inc.*, 772 S.W.2d at 444; *see* Tex. Bus. & Com. Code Ann. § 2.314(b)(3). To make prima facie showing of a defect based solely on circumstantial evidence, Pleasant must present evidence that the diesel he purchased from Murphy Oil contained water when it left Murphy Oil's possession. *See Plas-Tex, Inc.*, 772 S.W.2d at 444.

Pleasant argues that he provided circumstantial evidence that the water in his fuel tank could only have come from Murphy Oil's diesel fuel storage tank. During

11

trial, Pleasant argued that in its Responses to Plaintiff's Second Set of Requests for Admissions, Murphy Oil admitted it had high quality fuel that met or exceeded government regulations and that such admissions show Murphy Oil breached its warranty that its diesel was "good and solid fuel[,]" because it had water in it. Murphy Oil argued that Pleasant presented no evidence of a breach of warranty because he did not prove Murphy Oil's diesel had water in it. Murphy Oil argued that Pleasant only proved there was water in his fuel tank. Pleasant asserted that since the fuel tank was locked and there was no rain or other logical explanation, the only logical conclusion was the water was in the diesel when he purchased it from Murphy Oil.

Despite Pleasant's assertions, our review of the record shows that while Pleasant's circumstantial evidence established there was water in his fuel tank, it did not amount to more than a scintilla because it failed to establish that the water came from the diesel he purchased from Murphy Oil. *See City of Keller*, 168 S.W.3d at 813-14; *Plas-Tex, Inc.*, 772 S.W.2d at 444; *see also* Tex. Bus. & Com. Code Ann. §§ 2.314(b)(3), 17.50(a)(2). Instead, the evidence shows the Texas Department of Licensing and Regulation's investigation found zero water in Murphy Oil's fuel storage tanks during the period of May 22 through May 25, 2020, and Murphy Oil's internal investigation shows that it sold 351.33 gallons of diesel to 18 customers on May 24, 2020, and Pleasant was the only customer who filed a bad gas claim. We

12

conclude the trial court did not err by finding that Pleasant's circumstantial evidence is insufficient to prove all the elements of his claim by a preponderance of the evidence. *See City of Keller*, 168 S.W.3d at 813-14. Accordingly, we also conclude the trial court correctly granted a judgment for Murphy Oil. We overrule Pleasant's sole issue and affirm the trial court's Order and Final Judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on June 25, 2024
Opinion Delivered December 5, 2024

Before Golemon, C.J., Wright and Chambers, JJ.